**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 1 0 2026

ERIK PALTROW
CLERK

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

VICTOR R. MARSHALL

    *Plaintiff,*

v.

    No. CV 26-1883 JHR

    JURY TRIAL DEMANDED

ANNE TAYLOR, JOSEPH C. GONZALES,
CHRISTINE LONG, and JANE GAGNE,
in their official capacities as Disciplinary Counsel
for the Disciplinary Board of the
New Mexico Supreme Court;
DAVID J. STOUT, in his official capacity as
Chair of the Disciplinary Board;
RAUL TORREZ, in his official capacity as
Attorney General of New Mexico; and
RYAN ELLISON, in his official capacity as
First Assistant United States Attorney
for the District of New Mexico;

    *Defendants.*

## COMPLAINT FOR PROSPECTIVE RELIEF
## AGAINST CENSORSHIP

TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Parties.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Jurisdiction and Venue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

The New Mexico Supreme Court has created a system of censorship
that violates the First Amendment and Due Process Rights
of all lawyers, their clients, the press, and the public. . . . . . . . . . . . . . . . . . . . . . . . 9

The NMSC has repudiated the constitutional protections of falsity
and "actual malice" under *New York Times v. Sullivan.* . . . . . . . . . . . . . . . . . . . . . . 13

The NMSC has prohibited attorneys and their clients from using
"after-acquired evidence" to prove the truth of their assertions. . . . . . . . . . . . . . . . 16

The NMSC has revived the ancient and unconstitutional
doctrine of "seditious libel". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

The NMSC allows judges to impose sanctions for criminal and civil contempt
without limit, without jury trial, and without counsel. . . . . . . . . . . . . . . . . . . . . . . 25

Other NMSC rules violate constitutional rights.. . . . . . . . . . . . . . . . . . . . . . . . . . . 36

The NMSC is coercing everyone to adhere to the political ideology
of the Democratic Party and Emerge New Mexico.. . . . . . . . . . . . . . . . . . . . . . . . 43

The NMSC has weaponized the law to discriminate in favor
of Democrats, and against Republicans and independents. . . . . . . . . . . . . . . . . . . . 48

New Mexico lawyers have fallen silent under this censorship,
because lawyers need a license from the government to speak.. . . . . . . . . . . . . . . . . 49

The Epstein files show why this court must strike down the censorship rules. . . . . . . . . . . 53

Jeffrey Epstein provided sexual services to Bill Richardson.. . . . . . . . . . . . . . . . . . . 54

Epstein and Richardson shared the same law firm and lawyers.. . . . . . . . . . . . . . . . . 56

The censorship rules are being used to cover up corruption, conflicts of interest,
and case fixing at the very highest levels of government in New Mexico. . . . . . . . . . . . . . 56

Claims for Relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

## INTRODUCTION

1. This complaint seeks prospective relief against the system of censorship which has been imposed on the state judicial system in New Mexico. In recent years the New Mexico Supreme Court ("NMSC") has taken actions that destroy basic constitutional rights, without being noticed by the press or the public. Attorneys in New Mexico are aware of this censorship, but attorneys have been frightened into silence by the new rules. Lawyers like to tout themselves as champions of free speech, but lawyers need an annual license from the NMSC to practice law. Because attorneys need a government license to speak in court, attorneys are especially vulnerable to government censorship. New Mexico attorneys have observed that one attorney has been stripped of his license and livelihood because he dared to do what an attorney is supposed to do – speak the truth in court on behalf of clients. So lawyers who have licenses have not uttered a peep of protest against the censorship.

2. Attorney speech is supposed to enjoy the highest degree of protection under the First Amendment and due process clause. Recently however the NMSC has systematically stripped away these constitutional protections by a series of actions that are set forth later in this complaint. *Inter alia*,

3. • The censorship rules eliminate falsity as an element of defamation, in violation of *New York Times v. Sullivan*;

4. • The rules eliminate the requirement of "actual malice," contrary to *New York Times* and *Harte-Hanks*;

5. • The NMSC opines that truth or falsity is unimportant;

1

6.     • The rules prohibit lawyers (and their clients) from gathering and introducing "after-acquired evidence" to prove the truth of their assertions.  This ban on so-called "after-acquired evidence" destroys discovery and violates due process;

7.     • The rules create sanctions for contempt of court which violate the jury trial guarantees in the federal and state constitutions, and the prohibitions against excessive fines;

8.     • The rules violate the supremacy clause in the federal and state constitutions; and

9.     • These new rules destroy the Free Speech and Due Process rights that belong to clients, not just attorneys, because lawyers speak on behalf of their clients, not for themselves.  *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011.

10.    These actions are flagrantly unconstitutional.  No other state has rules remotely like the rules in New Mexico.

11.    The New Mexico Supreme Court has locked down the legal profession and the legal system in New Mexico.  No relief from censorship is available in the state court system, because the NMSC sits atop the entire system.

12.    Therefore, this complaint asks the federal courts to step in to protect constitutional rights in this state, exercising the authority which has existed since the Civil War and the Fourteenth Amendment.  Although the American system of dual federalism sometimes seems cumbersome, there is genius in its design, because it provides redundant guarantees of freedom.  When a state takes actions that infringe the Constitution, citizens can obtain redress in federal court, because the federal courts have the power, and the duty, to stop unconstitutional conduct by state officials.

2

13.     To do this, this complaint asks for relief in a logical sequence, starting with the easiest questions first.

14.     *Do the censorship rules apply in federal court?* The answer to this question is clearly "no," because the censorship rules are unconstitutional and unworkable.  In normal circumstances, the McDade Amendment requires attorneys in federal courts to follow the state's rules for attorneys.  28 U.S.C. § 530B.  However, if the state's professional rules violate the Constitution or impede the functioning of the federal courts, those rules are pre-empted and do not apply.  *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 923 (10th Cir. 2016), *cert. denied*, 583 U.S. 905 (2017).  This complaint asks the US Attorney and DOJ to take a position on this question, along with the state Attorney General, because the court needs to decide the McDade question at the very outset of this case.  If this court were to rule that lawyers in federal court were required to operate under the censorship rules, then the federal courts would not be able to function.

15.     *Are the state censorship rules constitutional?* The answer to this question is clearly "no." The censorship rules violate a long line of cases from the Supreme Court of the United States, beginning with *New York Times v. Sullivan*; *Harte-Hanks*; *In re Ruffalo*; *Garrison*; *In re Sawyer*; *Liljeberg*; *Landmark Communications*; *303 Creative LLC*; *Childs v. Salazar*, 607 U.S. __, No. 24-539 (Mar. 31, 2026); and *Olivier v. City of Brandon*, 607 U.S. __, No. 24-993 (Mar. 20, 2026).  These cases and many others are discussed below, in the main part of this complaint.

3

16. This complaint is accompanied by an "Expedited Motion for Partial Declaratory Relief" on selected issues that can be quickly decided as a matter of law. There are good reasons for issuing declaratory judgments on certain key issues as soon as possible:

17. • "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976));

18. • The censorship rules affect all the attorneys in New Mexico – more than 6,000 of them; and

19. • Plaintiff is facing contempt sanctions on July 1, 2026, including incarceration and unlimited fines.

20. In this instance, declaratory relief is quite straightforward, because the complaint is essentially asking this court to declare what the Supreme Court of the United States has already declared many times before.

PARTIES

21. The defendants named in the caption of this complaint are identified and sued in their official capacities.

22. Defendants Anne Taylor, Christine Long, Jane Gagne and Joseph C. Gonzales are or were Disciplinary Counsel for the Disciplinary Board of the New Mexico Supreme Court. They investigate and prosecute disciplinary complaints against lawyers. Hereafter they are referred to as "Disciplinary Prosecutors."

23.    Defendant David J. Stout is the current Chair of the Disciplinary Board.  He is sued in his official capacity only.

24.    Defendant Raul Torrez is the Attorney General of New Mexico.  He is sued in his official capacity only.

25.    The defendants identified in the preceding paragraphs work for the state, exercise state authority, and act under color of state law.  They are sometimes referred to as "the State Government Defendants."

26.    Defendant Ryan Ellison is First Assistant United States Attorney for the District of New Mexico.  He is sued in his official capacity only.

27.    Plaintiff Victor R. Marshall was the subject of the unconstitutional disciplinary sanctions in *Marshall I* and *Marshall II*.  Marshall's CV is attached as Exhibit 19.

28.    As one aspect of this lawsuit, he seeks to enjoin future prosecutions or sanctions against him, and against other lawyers, as authorized by *Olivier v. City of Brandon*, 607 U.S. _, No. 24-993 (Mar. 20, 2026) and *Wooley v. Maynard*, 430 U.S. 705 (1977).  In late March 2026, the Supreme Court ruled 9-0 that a plaintiff can bring a lawsuit for prospective relief to prevent his prosecution under a law that violates the First Amendment, even though it could be argued that the plaintiff is making a "collateral attack" on his earlier conviction under that law.

> Recall the Court held in [*Wooley v. Maynard*] that Maynard could sue under §1983 to prevent future enforcement of an allegedly unconstitutional statute, despite a prior conviction under that law. . . . The same rule allows Olivier to sue under §1983 to enjoin future prosecutions under the city ordinance, despite his prior conviction.  Were that not so, Olivier would face the same dilemma as Maynard:  flout the law and risk another prosecution, or else

5

forgo speech he believes is constitutionally protected. See *Wooley*, 430 U. S., at 710; *supra*, at 7. We declined to put Maynard to that choice, and we will not put Olivier to it either. His suit to enjoin the ordinance . . . may proceed.

*Olivier*, slip op. at 12.

29.    Plaintiff Marshall is facing the same dilemma as Plaintiff Olivier and Plaintiff Maynard. He is facing a contempt hearing on July 1 which will be conducted under the censorship rules. Thus Marshall faces the same unconstitutional dilemma as Mr. Olvier and Mr. Maynard, which Justice Kagan described as a choice "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity." *Olivier*, slip op. at 7.

30.    Marshall is facing the immediate threat of incarceration and unlimited fines on July 1, 2026. On April 15, 2026 the Second Judicial District Court issued a bench warrant for Marshall's arrest. Exhibit 1. On the same date the state judge set a contempt hearing for July 1. Exhibit 2. On July 1, Marshall is facing both civil and criminal penalties for contempt, with no ability to defend himself.

31.    Marshall is 79 years old, and he has health issues. Being sent to the Metropolitan Detention Center would destroy his health and create an immediate risk of injury or death.

32.    Marshall cannot defend against the upcoming contempt charges, because he has been stripped of his constitutional rights by a series of censorship rules promulgated by the New Mexico Supreme Court (NMSC), described in greater detail later in this complaint. The censorship rules deprive Marshall – *and all other lawyers and litigants in New Mexico* – of

fundamental rights under the Constitution of the United States and the laws of New Mexico.

33.     Marshall seeks prospective relief in the form of an expedited declaration that the censorship rules and procedures are unconstitutional.  It is hoped that an expedited declaratory judgment will be sufficient to forestall the July 1 proceeding.  If not, Plaintiff will ask for injunctive relief as authorized by the last clause in the first sentence of § 1983.

34.     In conformance with *Olivier*, Marshall does not seek to recover damages due to the past sanctions against him.  He does not seek to set aside his past conviction for criminal contempt.  However, as authorized by *Olivier*, Marshall does seek purely prospective relief to prevent the censorship rules from being used in the future against him and against the more than 6,000 attorneys who hold law licenses in New Mexico.

## JURISDICTION AND VENUE

35.     The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because this action arises under the Constitution and laws of the United States.  *Inter alia* this complaint asserts constitutional claims based on the First Amendment, the Due Process clause, the supremacy clause, equal protection, and the Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments.  Constitutional claims are within the jurisdiction of the federal court under the Fourteenth Amendment and the Civil Rights Acts, including 42 U.S.C. §§ 1983, 1981, 1982, 1985, 1986, and 1988, and Title VI and VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000d.

7

36.    The Court also has jurisdiction under 28 U.S.C. § 1343 because this action is to protect the civil rights specified in that section.

37.    The Court has jurisdiction under 28 U.S.C. § 1346 because some defendants are agencies of the United States.

38.    The Court has jurisdiction pursuant to 28 U.S.C. § 1361 because this lawsuit seeks to compel an officer or employee of the United States or an agency to perform a duty imposed by law.

39.    The Court further has authority under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702 and 706, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, because the federal defendants and their agencies are not acting in accordance with law.

40.    This case falls within the traditional and inherent equitable jurisdiction of the federal courts. *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326-27 (2015).

41.    The Court has authority to enter a declaratory judgment and to provide temporary, preliminary, and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; the Administrative Procedures Act, 28 U.S.C. §§ 2201-2202; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers.

42.    The state defendants have violated clearly established constitutional and statutory rights. The state defendants were aware of these clearly established rights but they knowingly chose to violate them. Thus far, the state defendants have refused or failed to correct their violations of clearly established rights.

8

43. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over claims arising under the Constitution and laws of the State of New Mexico. Plaintiff's state law claims are related to their federal claims, arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the U.S. Constitution. Under the doctrine of "selective incorporation" protections under state law are incorporated into federal law via the Due Process Clause and the Fourteenth Amendment.

44. This Court has personal jurisdiction over Defendants, and venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants are public officials, are sued in their official capacities, and certain Defendants maintain their principal headquarters in this district. A substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## FACTS AND APPLICABLE LAWS

45. **The New Mexico Supreme Court has created a system of censorship that violates the First Amendment and Due Process Rights of all lawyers, their clients, the press, and the public.**

46. In recent years, the New Mexico Supreme Court has constructed a system of censorship, step by step, by issuing opinions and court rules. The censorship apparatus has been assembled with several interactive components which operate together to destroy constitutional rights which belong to all citizens.[1]

---

[1] All bold emphases are added unless otherwise noted.

9

47.    (A) *In the Matter of Marshall,* **2023-NMSC-006 (Mar. 13, 2023)** (*Marshall I*).  Exhibit 3.  This opinion destroys the First Amendment, in a series of astounding rulings.  First, the opinion eliminates truth as a defense to a charge of defamation.  2023-NMSC-006, footnote 2: "Just as we reject imposing a requirement that the statement be, in fact, false, so we reject a requirement that it be demonstrably true."  Second, the opinion  abolishes the "actual malice" requirement,  in violation of *New York Times v. Sullivan* (1964) and *Harte-Hanks Communications* (1989).  ¶¶ 12-24.  Third, the opinion discriminates against speech based on content and viewpoint, contrary to many decisions by the federal Supreme Court, including *Childs v. Salazar*, No.24-539 (Mar. 31, 2026).  Fourth, the opinion punishes content that is critical of judges with sanctions, loss of professional license, fines, and imprisonment.  Conversely, the NMSC opinion makes the opposite viewpoint – praise for the judiciary – into a duty for all lawyers.  Fifth, the opinion destroys Due Process because it prohibits lawyers (and their clients) from using "after-acquired evidence" to prove the truth of their contentions.  ¶¶ 25-27.  Sixth, the decision violates the Supremacy Clause because it repudiates federal law which is clearly established in the Constitution, the Bill of Rights, federal statutes, and the caselaw from the Supreme Court of the United States.

48.    (B) *In the Matter of Marshall,* **2023-NMSC-009 (Mar. 16, 2023)** (*Marshall II*).  Exhibit 4.  This decision creates *ex post facto* penalties for contempt of court – criminal and civil, direct and indirect.  The opinion violates the protections of Due Process, Free Speech, the Fifth, Sixth, and Seventh and Fourteenth  Amendments, and the excessive fines clause.

49.    (C) **2025-NMSC-019 (Mar. 20, 2025)**. *State v. Maestas* directs contempt fines to be paid to funds controlled by the court, rather than to the general fund.

50.    (D) **NMSC Order No. S-1-RCR-2025-00158** changes the label on criminal contempt to call it "punitive contempt," to evade and obscure the constitutional and statutory safeguards against criminal contempt.

51.    (E) **NMRA Rules 16-804(G) and 21-203(C)** outlaw derogatory or demeaning speech, even though such speech is protected by the First Amendment.

52.    (F) **Rule 18-201(D)** compels all attorneys and judges to undergo DEI (diversity, equity, inclusion) indoctrination every year.

53.    (G) **Rule 21-211 (effective December 31, 2023)** was amended to eliminate the requirement that judges must disclose information that the parties or lawyers might consider relevant to possible disqualification, even if the judge personally believes that disqualification is not required.  Rule 21-211 was also changed to eliminate mandatory disqualification when the judge was previously associated with lawyers who participated in the matter in controversy.

54.    (H) **Order No. S-1-AO-2025-0017 (issued October 1, 2025)** reorganizes the water courts, leaving Judge James J. Wechsler in charge of the three main rivers in New Mexico: the San Juan River, the Rio Grande, and the Pecos River.

55.    (I) **Rules 17-304 and 16-206(D)** empower the censorship system to operate in secret behind closed doors, because the Disciplinary Board can investigate, warn, and sanction attorneys without creating a public record.

11

56. (J) On February 18, 2025, the NMSC issued a gratuitous "letter to the public" vowing to oppose the Trump administration's initiatives against DEI, gender identity, and trans ideology. This was a partisan political manifesto by all five justices to show their opposition to the Trump administration, not a judicial act.

57. (K) At a disciplinary hearing on May 14, 2026, several justices remarked that everyone in New Mexico needs "a teachable moment" about *Marshall I and II*, because these opinions have received insufficient attention from lawyers and the public and the press. *In the matter of Chavez,* https://www.youtube.com/watch?v=f26RAfN72rA. The NMSC is escalating its efforts to muzzle attorneys in this state.

ANALYSIS OF CONSTITUTIONAL ERRORS IN 2023-NMSC-006

DEFAMATION, RULE 16-802(A)

58. **In *Marshall I*, the New Mexico Supreme Court expressly rejected the First Amendment requirement that a defamatory statement must be proved to be false.** In America, truth has been a defense to a claim for defamation for more than 200 years – until now. In *Marshall I*, the NMSC expressly rejected the constitutional requirement that a defamatory statement must be false:

> **Just as we reject imposing a requirement that the statement be, in fact, false, so we reject a requirement that it be demonstrably true.**

2023-NMSC-006, ¶ 16, n.2.

59. In America, truth has always been a defense against defamation – until now. Under this new rule about speech, *truth or falsity no longer matters.* The New Mexico courts have

now entered a post-truth era, unless the federal courts take action to enforce the First Amendment.

60.    **The NMSC has repudiated the constitutional protections of falsity and "actual malice" under *New York Times v. Sullivan* and *Harte-Hanks Communications*.**  Under a long line of cases starting with *New York Times v. Sullivan*, 376 U.S. 254 (1964), the United States Supreme Court has ruled many times that defamation of a public official cannot succeed unless the plaintiff proves (1) that the statement was false, and (2) in addition that the defendant in fact entertained serious doubts that his statement was true.

61.    *New York Times v. Sullivan* added another layer of protection for Free Speech about public officials – the "actual malice" standard, sometimes referred to as "reckless disregard."

62.    The *Sullivan* court stated that "actual malice" means that the defendant made the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not."  The *Sullivan* court also held that when the standard is actual malice, the plaintiff must prove actual malice by "clear and convincing" evidence, rather than the usual preponderance of evidence.  The *Sullivan* court ruled that the plaintiff must show "the convincing clarity which the constitutional standard demands."

63.    The Supreme Court has repeatedly explained the meaning of "reckless disregard" for purposes of the First Amendment:

> A "reckless disregard" for the truth, however, requires more than a departure from reasonably prudent conduct.  "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *St. Amant,* 390 U.S., at 731, 88 S.Ct., at 1325.  **The standard is a subjective one—there must be sufficient evidence to**

13

> **permit the conclusion that the defendant actually had a "high degree of awareness of … probable falsity."** *Garrison v. Louisiana*, 379 U.S. at 74, 85 S. Ct. at 215. As a result, **failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard**. See *St. Amant, supra*, 390 U.S., at 731, 733, 88 S.Ct., at 1325, 1326. See also *Hunt v. Liberty Lobby*, 720 F.2d 631, 642 (CA11 1983); *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (CA6 1982).

*Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 688 (1989) (quoting *St. Amant v.*

*Thompson*, 390 U.S. 727 (1968) and *Garrison v. Louisiana*, 379 U.S. 64 (1964)).

64.   **In *Marshall I*, Part B, the NMSC expressly refused to follow the constitutional meaning of "reckless disregard" in *Harte-Hanks*.** The NMSC expressly rejected the constitutional meaning of "actual malice" under the First Amendment:

> {17} Notwithstanding this plain language [from Black's Law Dictionary], Marshall argues that we should adopt a standard based on First Amendment jurisprudence governing civil defamation actions arising from statements critical of public officials. He invites us to apply an "actual malice" standard to alleged violations of Rule 16-802(A), which would require the disciplinary authority alleging reckless disregard to prove (1) that the statement made by the attorney was in fact false; and (2) that the attorney made the false statement "with a high degree of awareness of probable falsity or entertained serious doubts as to the truth of his publication." *See In re Green*, 11 P.3d 1078, 1083-85 (Colo. 2000) (en banc) (per curiam) (text only)[3] (quoting 663 *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)). **We decline this invitation**.

2023-NMSC-006, ¶ 17.

65.   **This is an overt repudiation of the First Amendment and the Supremacy Clause. The courts of New Mexico are not free to "decline" to follow controlling precedents such as *Harte-Hanks*, *New York Times*, and *Garrison*.** When the federal Supreme Court interprets the Constitution, its decisions are commands, not invitations. The Supremacy

Clause makes the opinions of the federal Supreme Court – like *New York Times v. Sullivan*, *Garrison*, *In re Sawyer*, *Liljeberg*, *Landmark Communications*, *Childs* – binding on all state and federal courts, including the New Mexico Supreme Court.

66. Instead of the definition of "reckless disregard" in *Hart-Hanks*, the NMSC substituted its own definition, pulled from *Black's Law Dictionary*. ¶ 15. Although *Black's* definition might be passable in an ordinary auto accident case, it is not the definition found in First Amendment jurisprudence.

67. *Marshall I* misquotes the actual text and official comments in Rule 16-802(A). The rule is titled "Defamation," and it is subject to the constitutional requirements for defamation of a public official. Furthermore, the official comment states that "false statements" by a lawyer can undermine public confidence in the judiciary. If a lawyer makes an argument that is true, or substantially true, it is not actionable.

68. The new rules contradict the absolute privilege in *Helena Chemical v. Uribe*, 2012-NMSC-021, ¶ 2, 281 P.3d 237. In 2012, the New Mexico Supreme Court held that lawyers and litigants have absolute protection for statements they make during litigation.

> We also hold that statements made by litigants or their attorneys to the press after the lawsuit has been filed are absolutely privileged if the statements are a repetition or an explanation of the allegations in the pleading.

69. The new rules contradict Rule 16-306(A) on trial publicity, which allows lawyers and parties to make extrajudicial statements in non-jury cases.

15

70. The new rules contradict UJI 13-1002 and 13-1006 about the defamation of public officials. Under the Constitution and the UJI, falsity is the essential required element of defamation. UJI 13-1006:

> To support a claim for defamation, the communication must be false. One or more statements of fact in the communication must be false in a material way. Insignificant inaccuracies of expression are not sufficient.

These Uniform Jury Instructions correctly state the law, so they provide a convenient checklist of the errors embedded in *Marshall I*.

71. **In *Marshall I*, Part B2, the New Mexico Supreme Court destroyed Due Process by prohibiting attorneys and their clients from using "after acquired evidence" to prove the truth of their assertions.** The NMSC created an astounding new rule, stated in the following terms:

> **2. After-acquired evidence is not relevant to the determination of whether an attorney made a statement with reckless disregard for its truth or falsity.**
>
> Marshall argues that the hearing committee and hearing panel "have departed from the function of the judiciary, which is to seek the truth." He further argues that, because truth is a defense to a civil defamation action, he should have been able to present this after-acquired evidence. Disciplinary Counsel argues that the relevant inquiry is what Marshall knew when he made the statements at issue and, therefore, any evidence acquired after Marshall filed his pleadings in the Court of Appeals is immaterial. We agree with Disciplinary Counsel.
>
> **. . . As a matter of logic, any evidence an attorney may have acquired after making a statement could not have formed the basis for making it.**

2023-NMSC-006, ¶¶ 25-27.

16

72.    *Ergo,* by this fallacious logic, the NMSC opinion reaches several unconstitutional conclusions:

(A) the function of the judiciary is <u>not</u> to seek the truth;

(B) falsity is not required;

(C) truth is not a defense;

(D) actual malice is not required;

(E) attorneys are <u>not</u> allowed to collect evidence to prove the truth of the assertions which they have made on behalf of their clients;

(F) once a party files a pleading or brief containing a factual assertion, the "after-acquired evidence" rule kicks in;  and

(G) if a party acquires evidence that proves its contentions, that evidence will not be allowed.

73.    This new prohibition against "after-acquired evidence" effectively does away with discovery.  Discovery is a means of acquiring evidence after the fact, in order to find out the truth.  In America, there is an entire branch of government – the judiciary – that dedicates itself to acquiring evidence in order to find the truth.  However, the NMSC has expressly rejected the idea that the function of the judiciary is to seek the truth.  *Id.* ¶ 25; ¶ 16, n.2. 2023-NMSC-006 destroys these fundamental principles of Due Process.  The opinion prevents the parties from gathering evidence during the lawsuit, ¶¶ 25-27.  The opinion rejects the duty to distinguish between statements that are false and statements that are demonstrably true.  ¶¶ 12-24; ¶ 16 n.2.

17

74. **The legal system cannot operate if after-acquired evidence is prohibited.**

75. Consider some of the situations that typically arise in the state and federal courts in New Mexico.

(A) A vehicle accident. Plaintiff John Smith is crippled for life in an accident with a semi-trailer truck, so his lawyers sue the trucking company. In the complaint, Smith's attorneys state that the truck caused the accident. At that point, the after-acquired evidence rule bars the plaintiff from acquiring any more information to support the complaint. In the answer, the attorneys for the trucking company state that the plaintiff caused the accident. At that point, the after-acquired evidence rule kicks in against the defendant, so the defendant also cannot collect any more evidence. Suppose that after the case is filed, the plaintiff's attorneys find dashcam video footage from another vehicle on the highway. The dashcam evidence shows clearly that the truck caused the accident. However, this evidence cannot be used, because it comes within the prohibition against after-acquired evidence created by the NMSC in *Marshall I.*

(B) A medical malpractice suit. After the complaint is filed, plaintiff's lawyers find evidence that the wrong dosage was administered to the patient. That "after-acquired evidence" cannot be used at trial.

(C) A drug prosecution in federal court. The federal prosecutors charge a criminal defendant with drug dealing. The prosecution states that the defendant delivered a package with drugs to another person on a particular street. The defendant pleads not guilty. As the case goes on, the prosecution acquires evidence from a doorbell camera showing the

18

defendant making the exchange as charged, plus testimony from another participant in the drug deal. If the censorship rules were in effect in federal court, then the video and the testimony would not be allowed, because the proof falls into the category of "after-acquired evidence."

76. **The new rules punish parties and their attorneys if they issue a press release about a pending court case.** On February 27, 2018, the San Juan acequias (Marshall's clients) issued a press release about their motion to disqualify Judge Wechsler. The San Juan acequias were found guilty of defamation by inference, because they asked for honesty and fairness:

> "All we have ever asked for was honesty and fairness through the judicial system," said Mike Sullivan, chairman of the San Juan Agricultural Water Users Association. "How could this have happened?"

The disciplinary authorities deemed the press release sufficient to constitute defamation by inference, the inference being that the judge had acted unfairly. Hearing Committee FOF.

77. **As a result, it is now a punishable offense for a party to ask for fairness and honesty from the judicial system.**

78. Given this new concept of defamation, attorneys can no longer suggest that there is an "appearance of impropriety," because the disciplinary authorities interpret this as a statement that there is actual impropriety.

79. **The new censorship rules cite no authority to support sanctions against a lawyer for arguing the truth in court, because no such authority exists.**

RULE 16-301 – FRIVOLOUS FILINGS

80.    The disciplinary process took away Mr. Marshall's license to practice law because he supposedly filed "frivolous" pleadings on behalf of the acequias. This ruling will be used to chill attorneys who make legal or factual arguments in good faith, if the arguments happen to be true but unpopular.

81.    **The sanctions and new rules contradict the New Mexico Supreme Court's own rule about frivolous pleadings.** Rule 16-301 prohibits frivolous pleadings, without defining the term "frivolous." However, the official comment explains what "frivolous" means in practice:

> [2] **The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery.** What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. **Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.** The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

82.    **The term "frivolous" in 2006-NMSC-006 has been given an uncertain meaning that is unconstitutionally vague and overbroad.** It can easily be used as a weapon against unpopular views. The term "frivolous" is so broad that it is commonly used by lawyers and some judges to describe any argument they disagree with. Because it is overbroad, the term "frivolous" will be used to chill, supress and censor unpopular speech, contrary to *Grayned v.*

20

*City of Rockford*, 408 U.S. 104 ( 972); *Baggett v. Bullitt*, 377 U.S. 360, 372  (1964); *Hirschkop v. Snead*, 594 F.2d 356, 370-71 (4th Cir. 1979).

RULE 16-804(D) – CONDUCT PREJUDICIAL

83.    **The NMSC fails to recognize that it is <u>essential</u> – not prejudicial – to our adversarial system of justice to allow lawyers and litigants to present their opposing versions of the facts and the law, without fear of sanctions if they lose.**  It is also essential to the administration of justice that attorneys raise questions about the potential disqualification of judges, because the absolute impartiality of judges is the foundation of our legal system and the Due Process of law.

84.    **The NMSC committed consitutional error by infringing free speech to protect the reputation of the judiciary**.  *Marshall I,* ¶¶ 1, 37, 38, 40, 44.  The NMSC is flatly contradicting the Supreme Court of the United States, which has ruled many times that the reputation of the judiciary is not sufficient to justify restrictions on speech.

85.    In *Gentile v. Nevada State Bar*, 501 U.S. 1030 (1991), the Supreme Court reversed the sanctions against an attorney who criticized public officials and their conduct in office.  "There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment."  Such speech "is an essential mechanism of democracy, for it is the means to hold officials accountable to the people."

86.    *In re Sawyer*, 360 U.S. 622 (1959) reversed the Hawaii Supreme Court's suspension of an attorney accused of impugning the integrity of the judge.

21

87.     *Garrison v. Louisiana*, 379 U.S. 64 (1964) reversed the Louisiana Supreme Court's decision that prosecuting attorney defamed local judges when he accused them of hampering the investigation of vice in New Orleans.  The *New York Times* standard protects prosecuting attorney's criticism of local judges, even where the utterance is false; the Constitution precludes adverse consequences except for knowing or reckless falsehoods; "truth may not be the subject of either civil or criminal sanctions where a discussion of public affairs is concerned."

88.     *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) struck down a law abridging speech to maintain the appearance of judicial impartiality because it was not narrowly tailored to advance a compelling state interest justifying the abridgment.

89.     In *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) the Court held that protecting judicial integrity and the institutional reputation of the courts is not a sufficient reason for repressing Free Speech.  "The assumption that respect for the judiciary can be won by shielding judges from public criticism wrongly appraises the character of American public opinion."

90.     The NMSC's interpretation of "conduct prejudicial" suffers from the same constitutional defects as the other rules:  it is vague, overbroad, and can be applied in an arbitrary and discriminatory manner, to suppress Free Speech, and to cover up the truth.

91.     **The NMSC has revived the ancient and unconstitutional doctrine of "seditious libel."**  Centuries ago, the law in England made it a crime to say something derogatory or critical about a public official, even if the statements were true.

22

> The concept of seditious libel arrived in North America with the first English colonists. Under English law, it was a criminal offense to publish or otherwise make statements intended to criticize or provoke dissatisfaction with the government. Truth was not a defense and, in fact, made the offense worse. English libel law applied the following maxim: **"The greater the truth, the greater the libel."**

The First Amendment Encyclopedia, www.mtsu.edu/first-amendment/article/1017/seditious-libel.

92. The theory of seditious libel was based on the notion that if criticism of public officials is actually true, the truth will create an even greater public scandal, undermining the government's ability to govern. *Ergo*, the truth must be punished.

> The dominant purpose of the First Amendment was to prohibit the widespread practice of governmental suppression of embarrassing information. **It is common knowledge that the First Amendment was adopted against the widespread use of the material that is embarrassing to the powers-that-be.** See T. Emerson, The System of Freedom of Expression, c. V (1970); Z. Chafee, Free Speech in the United States, c. XIII (1941).

*New York Times Co. v. United States* (the Pentagon Papers case), 403 U.S. 713, 723-24 (1971) (Douglas, J. concurring). See also Jonathan Turley, *The Indispensable Right*, 51-59 (2024).

93. The American colonies largely rejected the doctrine of seditious libel even before the formation of the United States or the passage of the First Amendment. In 1735, the newspaper printer John Peter Zenger was prosecuted for seditious libel because he allegedly defamed the Chief Justice of New York, who was also the British Governor of the colony. Under the doctrine of seditious libel, truth was not allowed as a defense.

23

94.     The Chief Justice of New York tried to fix the case by hand-picking two judges for Zenger's prosecution.  As expected, those hand-picked judges ruled that the articles defamed the Chief Justice.  This left the jury to decide only whether Zenger had published the articles, a fact which he had already admitted.  But Zenger's lawyers argued to the jury that the defamatory statements were true, even though that argument was legally impermissible at the time.  The jury acquitted Mr. Zenger.  Richard Kluger, *Indelible Ink, The Trial of John Peter Zenger and the Birth of America's Free Press* (2016).[;'

95.     In *New York Times* and *Garrison*, the Supreme Court rejected the concept of seditious libel.

> The Constitution does not tolerate actions for libel on government.  State defamation laws, therefore, whether civil or criminal, cannot constitutionally be converted into laws against seditious libel.  Our decisions in the New York Times and Garrison cases turned upon that fundamental proposition

*Rosenblatt v. Baer*, 383 U.S. 75, 91-92 (1966) (Stewart, J., concurring).

96.     In essence, the NMSC is reinstatiing the doctrine of seditious libel and "libel on government."  In *Marshall I*, the court eliminates falsity and malice in order to protect the reputation of the judiciary, because "Our judicial system depends on the public's confidence in its fairness and authority." ¶ 1.  Therefore, according to this twisted logic, the truth about judicial misconduct must be censored and concealed to preserve public confidence in the courts.

97.     *Marshall I* is unconstitutional in every respect.  As a matter of law and procedure, it undermines the adversarial system of justice in America, and the Due Process of law

24

guaranteed by the Constitution, and the freedom of speech guaranteed by the First Amendment.

ANALYSIS OF CONSTITUTIONAL ERRORS IN 2023-NMSC-009

98.    *Marshall II* **allows judges to impose sanctions for criminal and civil contempt without limit, without jury trial, and without counsel.**

99.    Disciplinary proceedings against attorneys have heightened Due Process protections because they are quasi-criminal in nature. *In re Ruffalo*, 390 U.S. 544, 551 (1968); see also *Willner v. Committee on Character and Fitness,* 373 U.S. 96 (1963),. *Marshall II* violates *Ruffalo* by stripping the accused and his counsel of all constitutional rights, even the right to speak.

100.    On May 22, 2022, Chief Justice Bacon conducted a contempt hearing against Marshall via remote video links. **First, Chief Justice Bacon prevented Mr. Marshall's attorney (Jeffrey Baker, Esq.) from speaking if Mr. Marshall is going to speak also. Next, Justice Bacon prevented Mr. Marshall from speaking at all,** even to present legal argument, in the form of cases decided by the Supreme Court of the United States. Justice Bacon ruled that Mr. Marshall cannot speak at all unless he first surrenders his constitutional protections:

> **Chief Justice Bacon – But you can make the presentation, it just has to be under oath.**
> **[06:03] Marshall – Will it be subject to cross-examination, rebuttal, or any of the usual evidentiary safeguards?**
> **[06:12] Bacon – No Sir......**
>
> **[07:17] Marshall – Justice, let me point out the obvious Due Process and confrontation problems involved in this procedure, where you say that it**

> **won't be subject to the Rules of Civil Procedure, or rebuttal, or, by the way, witnesses.**
> Chief Justice Bacon: ...If you are going to make **arguments** before the Court, it will be under oath...So, if you want to say anything else to the Court right now, **anything at all, it needs to be done under oath...**
> Marshall: **I do have a Due Process and first amendment right to speak briefly in my own defense...**

Transcript, Exhibit 5. At that point, Chief Justice Bacon recessed the hearing. When the court reconvened, she silenced the microphones to prevent Mr. Baker and Mr. Marshall from speaking at all.

101.    A videotape of this entire remote hearing is attached and incorporated as Exhibit 6. The videotape shows that there was no disruption. The accused – Marshall – spoke for a grand total of 139 seconds, beginning with permission from the court. The video recording shows that the accused observed proper decorum: he was respectful and not disruptive. He did not curse the judges. He did not even raise his voice, despite a poor video remote connection. When Justice Bacon asked him to conclude, he continued for a few seconds, just long enough to finish stating his position for the record. At no time was he given a warning about being held in contempt.

102.    **On May 26, 2022, the day after the contempt hearing, Justice Bacon imposed a $2,000 fine for criminal contempt**. The NMSC later admitted that this fine exceeded the maximum amount allowed without a jury trial.

> This Court acknowledges that our prior precedent in *Seven Rivers*, 1973-NMSC-039, ¶ 42, imposes a $1,000 limit for punitive contempt fines absent a trial by jury. Going forward, we clarify that this limit no longer exists for contempt charges.

26

2023-NMSC-009, ¶ 19. Although this passage says that the new maximum applies "going forward," the $2,000 fine was imposed retroactively, in violation of the *ex post facto* clause, for conduct that occurred at the hearing on May 25, 2022, roughly 10 months before the opinion was issued in March 2023. Although the NMSC admitted error, it refused to correct it.

103. *Marshall II* infringes the right to present an allocution. *Green v. United States*, 365 U.S. 301 (1961) (it is not enough for courts to afford counsel an opportunity to advocate at sentencing, because even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself" in an allocution. *See also United States v. Feng Li*, 115 F. 3d 125 (2d Cir. 1997), where the Second Circuit reversed the District Court for impermissibly limiting the defendant's right to allocution, noting that "the sentencing judge's repeated interruptions – the first after only 9 lines of allocution – and what seems to be a repeatedly shrinking time allotment given to [the defendant] created an atmosphere obviously rendered it difficult for her to present an effective and potentially persuasive allocution."

104. *Marshall II* forces defendants to waive their constitutional rights in order to say anything at all, by way of allocution or legal argument.

105. *Marshall II* sets a trap for accused attorneys, because *Marshall I* bars them from presenting "after-acquired evidence" to defend themselves. Therefore attorneys could be prosecuted for perjury without being able to prove that their statements or arguments are

27

true. This is a denial of the Due Process of law guaranteed by the Fifth and Fourteenth Amendments, as well as the First Amendment.

106. *Marshall II* creates many categories of contempt: "civil"; "criminal"; "neither completely civil nor strictly criminal"; "direct"; "indirect"; "remedial"; "punitive"; "coercive"; "serious"; and "petty." The opinion acknowledges that "the classifications of contempt charges as 'civil' or 'criminal' are somewhat paradoxical." 2023-NMSC-009, ¶ 107. In reality, these shifting labels are largely unintelligible, which increases their chilling effect. As the Supreme Court recently said in *Childs v. Salazar*, "The First Amendment is no word game," and constitutional protections cannot be evaded by mere labels. *Marshall II* relabels criminal contempt as "punitive contempt" to sidestep the Constitution's protections. According to the NMSC, there is no limit on the amount of "punitive contempt" that a judge can impose without a jury. *Marshall II*, ¶¶ 15, 19, 22.

107. Like the other censorship rules, the new rules on contempt are unconstitutionally vague.

108. The NMSC changed its contempt nomenclature, the words and labels it uses, in order to eliminate the constitutional protections that apply to criminal and quasi-criminal proceedings. *Childs v. Salazar* does not permit this tactic.

109. The censorship system created by the NMSC violates the right against self-incrimination under the Fifth Amendment and Section 15 of the state's Bill of Rights. The system forces confessions by demanding a statement of "remorse" from the accused, which necessarily includes an admission of the crime. The same method coerces confessions in

28

civil cases using the threat of increased sanctions. These confessions are often extracted by the secret processes that disciplinary counsel use behind closed doors.

110. *Marshall II* violates the ex post facto clause, because it imposed a fine in excess of the maximum allowed by law at the time.

111. *Marshall II* violates the Sixth and Seventh Amendments. The decision allows some of these contempt sanctions to be imposed without a jury trial, in violation of the Sixth Amendment (right to jury trial in criminal or quasi-criminal cases) and the Seventh Amendment (right to jury trial at common law in civil cases).

112. **The new rules in *Marshall II* allow fines in any amount without a jury trial**. 2023-NMSC-009, ¶ 19. Under the new rule the threshold amount for jury trial is not specified. Instead it is left up to the district judges, meaning that one judge could decide that the threshold for jury trial is $1,000, while another judge might set the threshold at $25,000. Each individual judge can arbitrarily raise or lower the punishment for petty and serious offenses, *ex post facto*.

113. **The new rules in 2023-NMSC-009 violate the Eighth Amendment by allowing excessive fines or punishments**.

114. **The opinion disregards the difference between argument and evidence, which is uniformly recognized in state and federal courts**. UJI 13-119 ("Statements of the lawyers, however, are not themselves evidence. The evidence will be the testimony of witnesses, the exhibits, and any facts agreed to by the parties."); UJI 13-2007 (same). Argument is not evidence, so the proponent of an argument is not required to be sworn.

29

115.    **The opinion imposes unconstitutional conditions on Free Speech, because an accused lawyer must give up his Due Process rights in order to speak at all.** The accused must give up his right to have a lawyer argue for him.  And the accused is not even allowed to present legal citations to the court to show that he committed no violation.  See Exhibits 5 and 6 (transcript and videotape of the contempt hearing on May 25, 2022).

116.    *Marshall II* violates Due Process because it allows attorneys to be found guilty of direct criminal contempt without any advance warning that criminal contempt sanctions might be imposed.

117.    *Marshall II* and *Maestas* allow the NMSC to levy fines payable to funds controlled by the Court.  This practice is contrary to *Tumey v. Ohio*, 273 U.S. 510 (1927); *In re Murchison*, 349 U.S. 133, 136 (1955); *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971); *Ward v. Monroeville*, 409 U.S. 57 (1972); *Taylor v. Hayes*, 418 U.S. 488, 501 (1974); and *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986).  In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) the Supreme Court reaffirmed these precedents  in order to safeguard judicial impartiality.  See also *Cain v. White*, 937 F.3d 446 (5th Cir. 2019) (criminal fines cannot be paid to funds controlled by judges).

118.    **The censorship rules impose penalties and procedures for contempt which violate the First, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments**. 2023-NMSC-009 is a compendium of constitutional errors.  The opinion manages to violate almost all of the safeguards in the federal Constitution and Bill of Rights that protect against biased or tyrannical judges.  To curb the abuse of power by vindictive or biased judges, our state and

30

federal constitutions guarantee trial by jury, impose procedural safeguards, require absolute impartiality from all judges, and prohibit excessive fines. But *Marshall II* tosses all these constitutional rights aside, without mentioning them.

119.    The censorship rules violate the right to jury trial under federal law. "Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968).

120.    **The new rules infringe the right to effective assistance of counsel.** *See Argersinger v. Hamlin*, 407 U.S. 25 (1972) (no accused may be deprived of his liberty as the result of any criminal prosecution, whether felony or misdemeanor, in which he was denied the assistance of counsel); *Strickland v. Washington*, 466 U.S. 668 (1984) (the Sixth Amendment right to counsel is the right to the effective assistance of counsel); *Alabama v. Shelton*, 535 U.S. 654 (2002) (the possibility of "actual imprisonment" requires assistance of counsel); *Turner v. Rogers, et* al., 564 U.S. 431 (2011) (incarceration for civil contempt violated due process because he received neither counsel nor the benefit of alternative procedures).

121.    **These rules make it impossible for lawyers to provide effective assistance of counsel in almost all cases, criminal or civil.** A lawyer cannot use "after-acquired evidence," even when it proves his client's claims. A lawyer cannot ask for an impartial judge, or disclosure of judicial conflicts, because that is punished as "impugning the integrity of the judge." Conversely, attorneys now have the duty to make the judiciary look good to the public. Under the censorship rules, truth or falsity does not matter. A lawyer can be

31

sanctioned for "defamatory" or "derogatory" speech, *even when the speech is true*. "**Just as we reject imposing a requirement that the statement be, in fact, false, so we reject a requirement that it be demonstrably true.**" *Marshall I*, note 2.

122.    Because of the censorship rules, Marshall cannot find competent counsel to represent him. And even if competent counsel were willing to risk retaliation to represent him, the new rules would prevent them from providing effective representation.

123.    The censorship rules take away the tools and the protections that lawyers need to do their job, no matter how capable the lawyers might be. As an example, in the disciplinary action Marshall was represented by capable attorneys (Jeff Baker and Rene Zifferblatt). Mr. Baker and Ms. Zifferblatt submitted documentary evidence proving that Marshall's statements were substantially true. Exhibit 7. However, the NMSC denied that motion. Exhibit 8. Thus the NMSC conducted its hearings without allowing the truth to be presented into evidence. The NMSC presumed that Marshall's statements were false, and that erroneous presumption was the basis for all the sanctions against him – suspension, disbarment, and criminal fines.

124.    Later, at the contempt hearing on May 22, 2023, Mr. Baker attempted to speak on behalf of his client, but Justice Bacon silenced Mr. Baker, and then silenced Mr. Marshall too.[2] Exhibits 5 and 6.

---

[2]  Plaintiff asks the Court to take judicial notice of the record in that case, and other related cases listed in Exhibit 9 attached.

32

125. **The NMSC has created penalties and procedures for contempt which violate New Mexico's Bill of Rights.** New Mexico provides its own set of protections for these rights in its Constitution and statutes. These state protections are incorporated into federal law, via the Due Process Clause of the Fourteenth Amendment.

## NEW MEXICO CONSTITUTION, ARTICLE II

126. Sec. 12. [Trial by jury; less than unanimous verdicts in civil cases.]

The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate. In all cases triable in courts inferior to the district court the jury may consist of six. The legislature may provide that verdicts in civil cases may be rendered by less than a unanimous vote of the jury.

127. Sec. 13. [Bail; excessive fines; cruel and unusual punishment.]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

128. Sec. 14. [Indictment and information; grand juries; rights of accused.]

In **all** criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel; to demand the nature and cause of the accusation; to be confronted with the witnesses against him; to have the charge and testimony interpreted to him in a language that he understands; to have compulsory process to compel the attendance of necessary witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

129. Sec. 15. [Self-incrimination; double jeopardy.]

No person shall be compelled to testify against himself in a criminal proceeding,

130. Sec. 17. [Freedom of speech and press; libel.]

Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. **In all**

33

**criminal prosecutions for libels, the truth may be given in evidence to the jury;** and **if it shall appear to the jury that the matter charged as libelous is true** and was published with good motives and for justifiable ends, the party shall be acquitted.

131.    Sec. 18. [Due process; equal protection; sex discrimination.]

No person shall be deprived of life, liberty or property without **due process** of law; nor shall any person be denied **equal protection** of the laws. Equality of rights under law shall not be denied on account of the **sex** of any person.

132.    Sec. 19. [Retroactive laws; bills of attainder; impairment of contracts.]

**No ex post facto law**, bill of attainder nor law impairing the obligation of contracts shall be enacted by the legislature.

133.    **The NMSC has created sanctions for contempt which violate New Mexico's statutes, including §§ 34-1-2, 34-1-3, 34-1-4, and 34-1-5.** The New Mexico Legislature has protected its citizens by enacting statutes to prevent judges from abusing the power of contempt.

## STATUTES

134.    34-1-2. [Courts may preserve order and decorum; contempts.]

It shall be within the power of each and every presiding offcer [officer] of the several courts of this state, whether of record or not of record, to preserve order and decorum, and for that purpose to punish contempts by reprimand, arrest, fine or imprisonment, **being circumscribed by the usage of the courts of the United States.**

135.    34-1-3. [Sworn answer in contempt proceedings; evidence.]

**In all proceedings for contempt of court in the state**, the common-law rule discharging the contemnor upon the filing of a sworn answer denying the acts of contempt charged, shall hereafter not be in force, but in any such proceeding **evidence may be introduced by both parties upon any controverted point**, and the court shall decide such point upon the evidence.

34

136.    34-1-4. [Indirect criminal contempt proceedings; written publication out of court; jury trial; rules of procedure.]

> **In all proceedings** in the district courts for **indirect criminal contempt** arising out of written publications made out of court, the contemnor shall have the right to a trial by jury. The rules of procedure applicable to other criminal proceedings shall apply to these proceedings.

137.    34-1-5. [Judge eligible to hear and determine contempt proceedings.]

> The resident judge **when not disqualified in the original proceeding** and the judge entering any order, judgment or decree shall have jurisdiction to hear and determine any proceeding for contempt arising out of such order, judgment or decree.

138.    38-2-9. [Truth and mitigating circumstances in action for libel or slander.]

> In the actions mentioned in the last preceding section [repealed], the defendant may, in his answer, allege both the truth of the matter charged as defamatory and any mitigating circumstances admissible in evidence, to reduce the amount of damages, and whether he prove the justification or not, he may give mitigating circumstances in evidence.

139.    **On August 25, 2025 the NMSC issued revised rules which institutionalize and perpetuate these constitutional errors on contempt**. Supreme Court Order No. S-1-RCR-2025-00158 effective October 9, 2025 (reinstating and amending Rule 1-93, Rule 2-110, Rule 3-110, Rule 5-112, Rule 6-111, Rule 7-111, Rule 8-110, Rule 10-169, and Criminal Forms 9-611, 9-612, 9-614, and 9-615.

140.    The new rules are an exercise in obfuscation. 2023-NMSC-009 and the August 2025 rules engage in word games, changing the  labels to infringe constitutional rights, contrary to *Childs v. Salazar*. The shifty terminology obscures the reality that the new rules allow attorneys to be convicted of a crime without the safeguards of the law. The new rules assert

that judges should use good judgment in using their contempt powers, but vague admonitions are not a substitute for the specific protections found in the federal constitution, and the state constitution, and state statues.

141.    **Other NMSC rules violate constitutional rights.**

142.    **Rule 16-804(G)** makes it professional misconduct for a lawyer to engage in "harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, or marital status." This rule includes "harmful verbal conduct" that shows bias or prejudice, and "derogatory or demeaning verbal . . . conduct."

143.    **Rule 21-203(C)** requires judges to prevent lawyers from "manifesting bias or prejudice, or engaging in harassment based on attributes including but not limited to "race, religion, ethnicity, sexual orientation, gender identity, socioeconomic status, political affiliation."

144.    **Rules 16-804(G) and 21-203(C) are unconstitutional in several respects. The rules restrict pure speech, i.e. purely verbal utterances, unaccompanied by any conduct. The rules discriminate based on the content and viewpoint of the speech, so they cannot survive strict scrutiny under *Childs v. Salazar*.**

145.    Further, **the rules are void for vagueness and overbreadth** under the First Amendment and the Due Process clause, as the rules leave key terms undefined, like "sexual orientation," "gender identity," "harmful," "harassment," "bias," "derogatory," "demeaning." The rules do not give fair notice to lawyers and their clients about what is or

36

is not prohibited, because all of these terms are given different meanings by different persons.

146.    The undefined terms "sexual orientation" and "gender identity" are so broad that they protect sexual preferences and practices which have been outlawed by statute, such as pedophilia and bestiality.  NMSA, §§ 30-9-11, 30-9-13, 30-9-14, 30-9-14.3, 30-6A-3; 30-9A-3 (bestiality).  This creates a conflict between the court rules and the statutes.

147.    **The censorship rules outlaw speech which is merely derogatory or demeaning, even though the First Amendment protects such speech.**  The rules run afoul of the First Amendment's protections for speech that is offensive, even when the speech is deeply misguided, hurtful, caustic, or outrageous.  *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U. S. 557, 574 (1995); *Snyder v. Phelps*, 562 U. S. 443, 456 (2011).

148.    **Rule 16-804(G) now makes it professional misconduct for a lawyer to engage in "derogatory" speech, but lawyers are often required to engage in derogatory speech, especially in litigation**.  Attorneys often say or write things that derogate their opponents or public officials, such as:

"Officer Gonzales shot my client when there was no threat."

"Joe Smith stole money from my client."

"Judge Jones committed reversible error in instructing the jury."

"XYZ Corporation manufactured a defective tire."

"Ralph Smith is a liar. He's not telling the truth."

37

Statements like these are no longer allowed under Rule 16-804 (G).  The vague and undefined term "derogatory" is simply too broad to survive First Amendment scrutiny, because it "prohibits a substantial amount of protected speech." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).  Under this rule, "derogatory" speech  can be punished even if it is true, just like "defamatory" speech.

149.    The rules are also invalid because they punish statements of opinion, which are protected by the First Amendment.  *FCC v. Pacifica Foundation*, 438 U.S. 726, 745-47 (1978): "Indeed, the First Amendment stands on the principle that if it is the speaker's opinion that gives offense, then that is precisely that reason that the speech is entitled constitutional protection."

150.    **Rule 18-201(D)** requires all lawyers and all judges to spend at least one hour every year taking a minimum continuing legal education course on "Equity in Justice" [sic].  The content of these courses must be approved in advance by a government body.

151.    According to the official commentary, Equity in Justice focuses on "identifying and eliminating the effects of prejudice, bias, and racism.  Addressing topics on race, gender, national origin, sexual orientation, disability, and other issues of disparity and inequity will underscore and define how shortfalls can be addressed and dismantled . . . [M]embers of the Bar must have a clear understanding of the changes that are needed to truly be in service to others."

152.    Equity in Justice incorporates topics like "implicit and explicit bias, systemic and structural oppression; equal access to justice; competent representation of diverse

38

populations; diversity and inclusion initiatives in the legal profession; recognition, mitigation, or elimination of bias in the legal profession or the legal system; anti-racism; cultural competency."

153.    **Rule 18-201(D) is an extreme form of DEI (diversity, equity, inclusion) training, imposed by a government – the State of New Mexico – not a private employer.** This is no longer permissible after the Supreme Court's decision in *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023). The mandatory DEI instruction requires all lawyers and judges to undergo mandatory indoctrination to learn that America and its legal system are based on racism, systemic and structural oppression, capitalist exploitation, disparity and inequity, and gender discrimination. This ideological instruction is required so that all lawyers must understand the changes that are needed to bring about a just society, according to the left-wing sort of Marxist instructors who teach these courses. No one else will be certified to teach these courses, unless they can show their ideological purity and their unswerving dedication to the leftist dogma dictated by the NMSC.

154.    **The NMSC is forcing all attorneys and  judges and to undergo political indoctrination in this quasi-Marxist claptrap. The NMSC has now decreed that Leftism is the official orthodoxy of the judicial branch, in plain violation of the First Amendment.**

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.

39

*West Virginia Board of Education v. Barnett*, 319 U.S. 624 (1943).

155.    The mandatory indoctrination program promotes some speech based on the content or viewpoint of the speech.  As an example, see Justice Bacon's presentation at the Black Lawyers Association program on November 19, 2020 where she mocks "the wall of white men," referring to the photos of judges in every courthouse.

https://www.youtube.com/watch?v=irv6duVEx6o, Exhibit 10.

156.    Rules 18-201(D) and 18-804(G) promote speech with a certain viewpoint, while they suppress speech with a different view.  The rule coerces lawyers and judges to think and say things like "America is based on slavery"; "Our society is based on the systemic and structural oppression of the poor, minorities, and women.  The Constitution is the instrument of this oppression."; "Justice from white men is an illusion."; "Until I took this course, I had no idea how racist and sexist I am.  I confess my errors and I will try to do better."

157.    Authoritarian governments often use tactics like these for group indoctrination and intimidation, because they are extremely effective.  Lawyers who are subjected to these DEI courses quickly realize that dissent is dangerous.

158.    DEI indoctrination teaches that our founding fathers were "dead white men," a variant of Justice Bacon's phrase "wall of white men."  In DEI dogma it is forbidden to believe that in 1787 those dead white men in Philadelphia created a system of government that is more advanced than any other country on earth, even today.  No, such a thought is

40

not permitted by DEI, because DEI teaches us that the Constitution is a document of oppression.

159.    All this DEI is bewildering to ordinary attorneys, who might wonder why lawyers and judges are sworn to uphold the Constitution, if the Constitution is an instrument of oppression.  If lawyers have stray thoughts like this, they need professional discipline and more indoctrination.

160.    **Order No. S-1-AO-2024-00016 compels lawyers and judges to use the personal pronouns and salutations picked by other persons to indicate their gender identity, like "Mx."**  Exhibit 11.  This order is unconstitutional because it compels speech contrary to *303 Creative LLC*, see below.  This rule outlaws "deadnaming" and "misgendering," when most persons have no idea what that means.  The order is void for vagueness.  The order is unconstitutional under *Childs v. Salazar*.  It is inconsistent with *United States v. Skrmetti, Attorney General for Tennessee*, No. 23-477, 605 U.S. ____ (Jun. 18, 2025), which holds that transgender status is not a suspect or quasi-suspect classification under the equal protection clause.  Therefore the rule has no compelling reason for infringing Free Speech by dictating the words that must be used by speakers.

161.    **Letter to the Public, February 18, 2025.**  Out of the blue, the NMSC issued a press release and a "letter to the public" vowing to oppose the Trump administration's initiatives against DEI and gender identity.  Exhibit 12. This declaration by the five justices had nothing to do with any pending case.  This is a political manifesto by sitting judges, all Democrats, against the Trump administration.  The justices have proclaimed themselves as

41

leaders of the resistance. Their letter is clear evidence of their disqualifying judicial bias and prejudgment.

162. By taking the actions described in this complaint, the New Mexico Supreme Court is actively pressuring lawyers and judges to adhere to the political ideology of the Democratic Party and Emerge New Mexico. Lawyers and judges are being pressured to engage in self-censorship, and this censorship in the legal sector impairs the rights of all citizens.

163. The actions of the NMSC deliberately discriminate against certain groups, including whites (known as "Anglos" in New Mexico), males, and heterosexuals. The discrimination is amplified when there is "intersectionality," when these groups overlap, as with "the wall of white men" (whites and males) decried by Justice Bacon. Conversely, the NMSC deliberately discriminates in favor of Native Americans. These actions violate a multiplicity of federal laws, including the First Amendment, the Due Process Clause, the Equal Protection Clause, the civil rights statutes, Title VI, Title VII, and Title IX. See the sections below, especially Misconduct by Justice Bacon.

164. **The NMSC weakened Rule 21-211 on judicial disclosure and disqualification.** In 2023, the NMSC summoned an official committee to rewrite Rule 21-211 on judicial disqualification and disclosure. The committee recommended strengthening the disclosure requirements by adding a section as follows:

> D. A judge shall disclose on the record any information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification on any of the grounds set forth in paragraph A, even if the judge believes there is no basis for disqualification.

This requirement was already in place as an official comment to the rule.

165. On December 31, 2023, the NMSC eliminated this disclosure requirement. **Under the revised rules effective 12/31/23, there are no disclosure requirements whatsoever**.

166. All of these rules and opinions are not confined to one lawyer. These are rules of general application that affect all lawyers, their clients, and persons who speak about public affairs.

167. **The New Mexico Supreme Court is coercing everyone to adhere to the political ideology of the Democratic Party and Emerge New Mexico.** Emerge New Mexico (see below) is a partisan Democrat political organization that funnels dark money to women and "non-binary individuals" if they support the platform of the Democratic Party.

168. Justice Bacon has been the driving force behind Emerge New Mexico for many years, in violation of the Code of Judicial Conduct. The Code requires judges to refrain from political activities (except for their own elections). Rules 21-400 through -406. Yet Shannon Bacon has been violating the Code of Judicial Conduct since Bill Richardson appointed her to the bench in 2010.

169. Justice Bacon has continuously violated the Code of Judicial Conduct by participating in Emerge New Mexico, a partisan political organization.

170. As soon as Bill Richardson appointed Shannon Bacon to the bench in March 2010, the Code of Judicial Conduct required Judge Bacon to stop any partisan political activities. However, since that time Judge/Justice Bacon has not stopped at all. She has persistently violated the Code by participating in partisan political activities which the Code of Judicial Conduct prohibits for judges and judicial candidates.

43

171.   *Inter alia*, Judge/Justice Bacon has acted as a founder, leader, fundraiser, and trainer in Emerge NM. Exhibit 13.  Emerge New Mexico is a partisan political organization that recruits, trains, funds, and supports Democratic women and "non-binary individuals" to run for public office.  Exhibit 14, https://nm.emergeamerica.org/about/about-us/, downloaded April 2025.

172.   Emerge New Mexico is a Democrat dark money organization; it channels money to Democrat candidates in ways that are impossible to trace, in order to evade state and federal laws which place limits on political contributions and require disclosure of large donors. Emerge New Mexico functions as part of Emerge America, a nationwide Democrat dark money network.  https://emergeamerica.org/.

173.   Emerge New Mexico is a political organization as defined in the Code of Judicial Conduct:

> X. "Political organization" means a political party or other group sponsored by or affiliated with a political party or candidate, the principal purpose of which is to further the election or appointment of candidates for political office.

Rule 21-003(X).

174.   By her activities in Emerge New Mexico, Judge/Justice Bacon has repeatedly violated the prohibitions in Rule 21-401(C) of the Code of Judicial Conduct.

> C. A judge shall not, except as permitted by Rule 21-402 NMRA,
>      (1) act as a leader or hold office in a political organization;
>      (2) publicly endorse or publicly oppose
>              (a) a candidate for public office,
>      (3) make speeches on behalf of a political organization;
>      (4) solicit funds for, pay an assessment to, or make a contribution to a political organization or candidate;

44

(6) make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court; or

(7) in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office.

175.  Judge/Justice Bacon has also violated Rule 21-400 – Canon 4:

A judge or candidate for judicial office shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary.

176.  Emerge New Mexico claims that it does not endorse candidates, but that claim is false.  Before an election, the Emerge organization selects one of its members as its candidate and then sponsors, raises contributions, and supports that candidate. In 2020 Emerge New Mexico actively supported Shannon Bacon in a partisan election for the NMSC.

177.  On the NMSC, Emerge alums occupy two of five seats.  On the N.M. Court of Appeals, the Emerge alums occupied 7 of 10 seats in 2024.  Exhibit 14.  As a result, it is impossible for a case to proceed all the way through the state court system without encountering Emerge judges, who have significant biases on some important issues that are likely to come before them.  Yet these judges rarely if ever recuse themselves as the law requires.

178.  Justice Bacon and Emerge New Mexico are violating the Campaign Reporting Act, NMSA, §§ 1-19-25 through -36.

45

179.    Justice Bacon and Emerge New Mexico are violating the Code of Judicial Conduct, especially Rules 21-300; 21-301; 21-306 (affiliation with discriminatory organizations); 21-400; 21-401; 21-402; 21-403; 21-404; and 21-406.

180.    Emerge New Mexico discriminates against men on the basis of sex. The organization exclude males; indoctrinates women against men; and teaches candidates that they are the victims of male privilege, male sexism, and male discrimination.

181.    Emerge New Mexico supports "non-binary individuals," a term borrowed from gender ideology to describe who are LGBTQ+ (Lesbian, Gay, Bisexual, Trans-Sexual, Queer, and plus [more]). For one attempt to define these terms, see https://parade.com/living/lgbtq-meaning. In DEI lingo, these vague and ever shifting terms are code words for discriminating against heterosexual males (and sometimes heterosexual females, depending on the circumstances).

182.    One pernicious aspect of the ideology of Emerge New Mexico is signified by the letter T, for Transsexual or Transgender. T ideology is based on the delusion that persons can actually change (transition) their biological sex, even though that is not possible. T ideologues use deceptive terms, like "transgender," to deceive susceptible people, even children, into believing that they can change or transition from female to male, or vice versa. T ideology advocates "transitions" that use puberty blockers, hormones, and/or surgeries on sex organs (which plastic surgeons call "top" and "bottom"). Part of the transgender ideology holds that males should be allowed to compete in sports against women, if the males self-identify as women.

183. The transgender movement has no scientific basis in medicine or biology. The movement exploits persons who suffer from gender dysphoria. These unfortunate people sometimes suffer from the delusion that they can change their sex, even though this is impossible.

184. Through these new rules, the NMSC has made the ideology of Emerge New Mexico and the Democratic Party mandatory for all lawyers. Rule 18-201 (D) requires all lawyers to undergo viewpoint indoctrination sessions every year as a condition of licensure, contrary to the First Amendment.

185. **The new rules run afoul of the Supreme Court's recent decision in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023)**. The new rules on professional conduct and continuing education force lawyers to speak as the government wishes them to speak, and to accept a message with which they disagree. 600 U.S. at 584-85. These coercive rules violate the First Amendment "freedom to think as you will and to speak as you think." *Boy Scouts of America v. Dale*, 530 U. S. 640, 660–661 (2000). The First Amendment does not allow "a government to coerce an individual to speak contrary to her beliefs on a significant issue of personal conviction, all in order to eliminate ideas that differ from its own." *300 Creative*, 600 U.S. at 165. **The Supreme Court included "participation in mandatory education programs" as one example of the coercive measures that are unconstitutional**. *Id.* at 581. Rule 18-201(D) falls into the same category, and it is even worse because it is imposed without any finding of wrongdoing by the lawyers.

47

186.    This conduct also violates several federal anti-discrimination laws.  It violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, because it discriminates on the basis of race or ethnicity.  It violates Section 1557 of the Affordable Care Act of 2010 because it allows discrimination in programs receiving health care funds.  It violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e- 2000e17 (as amended), because it creates discrimination in employment.  It violates Title IX of the Education Amendments Act, 20 U.S.C. §§ 1681-1688, because it discriminates on the basis of sex. It also violates Equal Protection and the civil rights acts.

187.    **The NMSC has weaponized the law to discriminate in favor of Democrats and Emerge graduates, and against Republicans and independents, in violation of the constitutional rights of political association and political expression.**

188.    The actions of the NMSC demonstrate that the NMSC is unalterably opposed to many recent decisions by the Supreme Court, including but not limited to: *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023); *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); *Ames v. Ohio Department of Youth Services*, No. 23-1039, 605 U.S. ____ (Jun. 5, 2025); *U.S. v. Skrmetti*, No. 23-477, 605 U.S. ____ (Jun. 18, 2025); *Mahmoud v. Taylor*, No. 24-297, 605 U.S. ____ (Jun. 27, 2025); *Mirabelli v. Bonta*, No. 26A810 (March 2, 2026); *Arizona v. Navajo Nation*, 599 U.S. 555 (Jun. 22, 2023).  The NMSC has staked out a position contrary to all of these decisions.  The NMSC is trying to prevent these decisions from being carried out in New Mexico, using its

48

considerable powers, even though the Supremacy Clause requires the NMSC to obey these decisions despite the state justices' disagreement with them.

189.   The changes to the New Mexico rules create a regime of viewpoint-based censorship, which is the most blatantly unconstitutional type of First Amendment violation. Viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995); *Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Counterman v. Colorado*, 600 U.S.66, 143 S. Ct. 2106 (2023).

190.   **The NMSC is violating the strict requirement of judicial impartiality, which is the bedrock principle of Due Process**. *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847 (1988); *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868 (2009); *Williams v. Pennsylvania*, 579 U.S. 1 (2016).  Without absolute judicial impartiality, all other rules of law will fail.

191.   **New Mexico lawyers have fallen silent under this censorship, because lawyers need a license from the government to speak.**  Lawyers cannot practice their profession – speaking for clients – unless they maintain a bar license from the Supreme Court.  And now the NMSC has sent a chilling message to all attorneys:  "Your license is in jeopardy if you engage in speech that we disfavor."

192.   The rules are so vague, so broad, so undefined, and so internally contradictory that they violate Due Process and Free Speech in several ways.  The rules are void for vagueness because they fail to provide sufficient notice of what is and is not prohibited.  And the rules authorize or encourage enforcement that is retaliatory, vindictive, selective, arbitrary, and

discriminatory. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012); *United States v. Lesh*, 107 F.4th 1239 (10th Cir. 2024). The rules contradict each other, so that the government can punish a lawyer no matter what she does. For example, if a lawyer pursues discovery, she is violating the rule against after-acquired evidence, and admitting that she did not have all the facts before filing suit, which is now a violation of Rule 16-301 (discussed below). On the other hand, if she fails to propound discovery, she is failing to represent her client. Either way, the attorney loses if the authorities chose to unleash the contradictory rules against her.

193. All of these actions are acts in a conspiracy to infringe Free Speech, Due Process, clause, equal protection, and other fundamental rights protected by civil rights statutes, see 42 U.S.C. §§ 1981 *et seq.*

194. **The new rules for censorship and indoctrination impose unconstitutional conditions on the exercise of First Amendment rights by lawyers and their clients.** The NMSC is conditioning the license to practice law on the attorney's adherence to official viewpoints. In particular, the new rules make it an offense for a lawyer to argue that a particular judge might be biased, even when there are reasonable grounds for advancing the argument that the judge might be acting unconstitutionally. In so doing, the new rules violate the right of attorneys and their clients to raise constitutional issues whenever they arise in the course of a lawsuit. *Legal Services Corporation v. Velasquez*, 501 U.S. 533 (2001) (government may not prohibit legal services attorneys from raising constitutional challenges, because attorneys speak for their private clients, not the government; preventing lawyers

50

from raising constitutional challenges would severely impair the judicial function by sifting out constitutional challenges to insulate the government from judicial inquiry). The new rules for censorship and indoctrination violate the First Amendment right of religious freedom that belongs to lawyers and clients whose religious beliefs are different than the views of the NMSC and Emerge New Mexico.

195.    The record in the *Vanderbilt/Austin Capital* case demonstrates that the after-acquired evidence rule blocks the search for justice in the courts.[3] *State of New Mexico, ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, No. D-101-CV-2008-01895 (1st Jud. Dist. Ct.) and *State of New Mexico, ex rel. Foy v. Austin Capital Management, LTD*, D-101-CV-2009-01189 (1st Jud. Dist. Ct.), *aff'd*, 2013-NMCA-043, 297 P.3d 357, *rev'd*, 2015-NMSC-025, 355 P.3d 1; second appeal *aff'd*, 2022-NMCA-026, 511 P.3d 329, *cert. denied*, No. S-1-SC-38413 (Apr. 15, 2022).

196.    After the Vanderbilt/Austin complaints were filed (in 2008 and 2009), Frank Foy and Victor Marshall acquired a surreptitious 2006 audio recording where participants in the Richardson ring discuss how the pay to play conspiracy works in New Mexico. Saul Meyer of Aldus tells his colleagues,

> MEYER: I'm pushing to have him [Frank Foy] fired before the October meeting [of the ERB].

To get rid of Foy, the conspirators are working through Bruce Malott, the Chairman of the Educational Retirement Board (ERB), RB, and Gary Bland, the State Investment Officer at the SIC. Bruce Malott was Bill Richardson's personal accountant, and the accountant for

---

[3] In support of this complaint, Plaintiff asks the court to take judicial notice of the court records in Vanderbilt/Austin litigation.

some of Richardson's political funds, like Moving America Forward. Richardson appointed both Bland and Malott to their government posts to carry out Richardson's extortion schemes.

197. On the audio recording Meyer explains how the conspiracy works at the SIC and the ERB. Marc and Anthony Correra used their connections to Richardson and Gary Bland to demand kickbacks from Wall Street firms on SIC and ERB contracts. (The Correras received at least $18 million in kickbacks on New Mexico investments.) Meyer complains that it is becoming harder for the conspirators to juggle all the kickback deals and place them without arousing suspicions:

> MEYER: . . . Julio feeds Anthony and Marc good deals. Okay? So that we don't have heartburn and don't get fired, so that we can then go and get other mandates. And in return, in this ecosystem, Anthony and Marc give Julio the ability to do a couple of deals a year . . . .
> UNIDENTIFIED: Whew.
> MEYER: That's it . . . . That's the whole way it runs. Okay? . . . To not think that Anthony and Marc don't have a stranglehold over this thing is crazy. **Because the Governor runs this sh\*t and they run the Governor.**
> ELLMAN: **How does Gary [Bland] fit into this mess?**
> O'REILLY: He listens to Marc, . . . or Anthony. . . . He does what Anthony says.
> ELLMAN: So when they want to put 25 million dollars or however much money in Carlyle, Mexico, who precipitates that decision?
> MEYER: Anthony. . . . Sometimes the Governor can get cute and go around him to a trustee. . . . **Now none of this leaves this room. . . . The Governor has no involvement officially, or unofficially. Okay?**

Aldus audio recordings. Thumb drive - Exhibits 15.

198. The after-acquired evidence proves that Governor Richardson was involved in a criminal conspiracy during the time he was represented by Shannon Bacon and Paul Bardacke, while they were partners at the law firm of Eaves, Bardacke & Baugh, and then

later at the law firm of Sutin, Thayer & Browne. The nature and extent of their involvement (if any) is unknown, because they have made no disclosures whatsoever.

199. According to the censorship rules written by Shannon Bacon in *Marshall I* and *II*, this audio recording cannot be used against anyone, since it is "after-acquired evidence."

200. **The Epstein files show why this court must strike down the censorship rules immediately**. The files released by the DOJ shed new light on the morally and legally corrupt relationship between Jeffrey Epstein and Bill Richardson.

201. In 2020 Plaintiff Marshall filed a detailed complaint against Bill Richardson under New Mexico's Fraud Against Taxpayers Act, on behalf of the State and Frank Foy (the former investment officer of the Educational Retirement Board and John Casey (a citizen), No. D-202-CV-2020-03004. Among other things, the complaint alleged:

> 30.    BILL RICHARDSON OPERATED THE RICHARDSON RING FOR HIS PERSONAL BENEFIT
> 33.    Bill Richardson benefitted from his graft in many ways. He obtained money for himself; money for his campaigns; money for his political organizations; lavish meals, entertainment, and travel; wine and liquor; sexual services and sexual favors.

202. The reference to "sexual services and sexual favors" includes the sexual services and sexual favors that Jeffrey Epstein provided to Bill Richardson at Zorro Ranch and elsewhere.

203. The 2020 lawsuit was reported by The Daily Mail.

https://www.dailymail.com/news/article-8768695/Former-NM-Governor-Bill-Richardson-accused-using-bribes-fund-sexual-services-favors.html.

A pdf of the article is attached as Exhibit 16. (Apparently the lawsuit did not receive any coverage from the news media in New Mexico.)

53

204.    **Jeffrey Epstein provided sexual services to Bill Richardson**.  Some of the sexual

services for Richardson were provided by Jeffrey Epstein, who hooked up with Richardson

during the 1990s while Richardson was a member of Congress.  Epstein acted as a pimp for

Richardson and many other powerful people, working with Ghislaine Maxwell and others.

205.    In 1993 Epstein purchased the Zorro Ranch, not far from Santa Fe, using a trust.

Epstein claimed he would develop an advanced race of human beings by selectively breeding

young women at Zorro Ranch.  Zorro Ranch provided a convenient locale for Richardson

and Epstein to indulge themselves.  Virginia Guiffre (one of Epstein's victims) identified

Richardson as one of the men who sexually abused her.

206.    **As a pimp, Epstein provided sexual services and sexual favors mostly to**

**Democrats.**  This fact made Democrats most unwilling to investigate or expose Epstein,

because the truth would damage the Democratic Party and many VIP Democrats.  Epstein

himself was a registered Democrat, and he operated most effectively in Democratic circles.

Because Epstein was a maker and keeper of sordid sexual secrets, those secrets gave him

power and influence even beyond the money he spread around.

207.    **At one point, then Attorney General Hector Balderas pretended to investigate the**

**abuse at Zorro Ranch, but his investigation was a sham, a whitewash.**  In reality, Balderas

covered up for Richardson at every opportunity, because Balderas was another one of

Richardson's political protégés.  Richardson picked Balderas for the legislature in 2004 and

state auditor in 2006, and Richardson financed Balderas' career with pay-to-play money.  As

State Auditor from January 1, 2007 to January 1, 2015,  and then as Attorney General from

January 1, 2007 to January 1, 2023, Balderas used his office to protect himself and his patron, Bill Richardson.

208.    In 2026 the DOJ released two documents revealing that there were closer links between Epstein and Richardson than previously known.

209.    The first document is **DOJ DOCUMENT EFTA01260020.** This is a FedEx billing showing that Jeffrey Epstein shipped an overnight package to Gary Bland, State Investment Officer, on August 23, 2005.  The document is attached and incorporated as Exhibit 17.  In the recent DOJ release this page is indexed as EFTA01260020, EFfA_00220705, and SDNY GM_00348013.

210.    The FedEx package was signed for by Rick Scroggins, who was an officer at the ERB at the time.  The contents of this package are not yet known, but this line of investigation needs to be probed thoroughly and immediately, because it indicates that Epstein was maneuvering towards an irresistible target:  the billions of dollars in public funds controlled by the State Investment Council and Educational Retirement Board.

211.    **Given Epstein's close relationship with Richardson, it now appears probable that Epstein participated in Richardson's pay to play schemes.**  At the time this package was sent, Richardson, Bland, and Malott were maneuvering to get rid of Frank Foy.  Frank Foy was an honest public servant and a man of integrity.  As Chief Investment Officer at the ERB, Foy stood as an obstacle to Richardson's fraudulent schemes, so he was forced out.

212.    The second document **is DOJ DOCUMENT EFTA002999922, -23.**  These are 2 pages from an inventory of Epstein files for what appears to be the year 2008.  This

document is attached and incorporated as Exhibit 18.  The document lists "Sutin, Thayer and Browne (Attorney Paul Bardacke)" as the attorneys for Zorro Ranch.[4]

213.    **The document shows that Epstein and Richardson shared the same law firm and lawyers** (Sutin Thayer and Browne, where Paul Bardacke and Shannon Bacon were partners) while Richardson was governor, during the time Epstein and Richardson were sexually abusing victims as Zorro Ranch.  This is another line of investigation that needs to move forward immediately to bring some measure of justice to the sexual victims of Jeffrey Epstein and Bill Richardson.

214.    **The censorship rules are being used to cover up corruption, conflicts of interest, and case fixing at the very highest levels of government in New Mexico.**

215.    To start uncovering the truth about government corruption, the first step is a declaration that the state censorship rules do not apply to cases in the federal courts for New Mexico.  (If any of the defendants contend that the challenged rules govern proceedings in federal court, they must explain how lawyers and judges can operate with a prohibition against "after-acquired evidence," because that prohibition does not appear in the federal rules on evidence or procedure.  That topic has never been taught in any law school or CLE program.)

---

[4] Epstein usually operated using LLCs, corporations, trusts and other artificial entities. Throughout this complaint, references to natural persons include the entities which they control, or in which they participate or have an interest, direct or indirect, disclosed or hidden.

216.    The next step is to declare that the censorship rules are unconstitutional. This step simply reiterates what the Supreme Court of the United States has declared many times before.

217.    It is hoped that this case will provide a forum for lawyers and the news media to speak up. If the Court decides that the state rules do not apply in federal court, that will encourage lawyers and journalists to end their silence.

218.    **The censorship rules induce self-censorship by lawyers**. The most effective form of censorship is self-censorship. Even if the censorial sanctions are rarely used, attorneys are shying away from expressing disfavored viewpoints and inconvenient truths. Under the pressure of these rules, fearless advocacy is giving way to fearful advocacy.

219.    **The new rules induce self-censorship by the press.** Restrictions on the press are unconstitutional when they induce "timidity and self-censorship" and "media self-suppression." *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989)); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551-62 (1976) (chilling and freezing effects on the press).

CLAIMS FOR RELIEF

220.    All claims for relief are asserted under federal law and under the analogous or related provisions in the law of New Mexico, which are are incorporated into federal law through the due process clause of the Fourteenth Amendment. "Federal law" includes constitutional law, statutory law, regulations and rules, and case law. Likewise, "New Mexico law" includes constitutional law, statutory law, regulations and rules, and case law.

57

Count 1

PROCEDURAL DUE PROCESS

The acts or omissions set forth in this complaint (including the censorship rules) violate the rights of procedural Due Process (a) under the Fifth and Fourteenth Amendments and federal law and (b) under state law, including the New Mexico Bill of Rights, Art.II, sec,18.

Count 2

FIRST AMENDMENT

The acts or omissions set forth in this complaint (including the censorship rules) violate (A) the First Amendment, including its provisions protecting Free Speech, the freedom of the press, the right to petition government, the right to religious freedom, and the right to receive information, and (B) under state law, including sec.17 of the  the New Mexico Bill of Rights.

Count 3

RIGHT TO COUNSEL

The acts or omissions set forth in this complaint (including the censorship rules) infringe (A) the right to counsel under federal law, and (B) under New Mexico law.

Count 4

RIGHT TO EFFECTIVE COUNSEL

The acts or omissions set forth in this complaint (including the censorship rules) deny (A) the right to effective counsel under federal law, and (B) under New Mexico  law.

58

## Count 5

### RIGHT TO JURY TRIAL

The acts or omissions set forth in this complaint (including the censorship rules) deny (A) the right to jury trial under federal law including the Sixth and Seventh Amendments, and (B) New Mexico law, including sections 12, 14, 15, 17 of the Bill of Rights, and §§ 34-1-2 through -5.

## Count 6

### CONTEMPT POWERS

The acts or omissions set forth in this complaint (including the censorship rules) deny the protections against contempt powers found in (A) federal law, and (B) state law, including sec.13, 14, 17 of the Bill of Rights, and §§ 34-1-2 through -5.

## Count 7

### EQUAL PROTECTION

The acts and omissions described in this complaint (including the censorship rules) deprive Plaintiff and other persons of the equal protection of the laws, in violation of (A) federal law, including the Fifth and Fourteenth Amendments, and (B) New Mexico law.

## Count 8

### SELECTIVE OR VINDICTIVE PROSECUTION

The acts and omissions described in this complaint (including the censorship rules) allow selective or vindictive prosecution, or the threat thereof, contrary to (A) federal law, and (B) the law of New Mexico.

59

Count 9

DEPRIVATION OF RIGHTS, PRIVILEGES OR IMMUNITIES

The acts and omissions described in this complaint (including the censorship rules) violate 42 U.S.C. § 1983 because they deprive citizens of rights, privileges, or immunities secured by (A) federal law, and (B) the laws of New Mexico as incorporated by the Fourteenth Amendment.

Count 10

RIGHT TO POLITICAL ASSOCIATION, AFFILIATION, AND EXPRESSION

The acts and omissions described in this complaint (including the censorship rules) discriminate in favor of the Democratic Party and Emerge New Mexico, and against those who were not members of the Democratic Party or Emerge New Mexico, in violation of the constitutional rights of political association, affiliation, and expression under (A) federal law, and (B) state law.

Count 11

IMPARTIAL TRIBUNAL

The acts or omissions set forth in this complaint (including the censorship rules) infringe the constitutional right to an impartial tribunal or judge under (A) federal law, and (B) state law.

60

Count 12

## RIGHT TO JUDGES OF UNQUESTIONED IMPARTIALITY

The acts and omissions described in this complaint (including the censorship rules) violate the right to judges whose impartiality cannot reasonably be questioned, as established by the Due Process clause, 28 U.S.C. § 144, Rule 21-211, and case law.

Count 13

## APPEARANCE OF IMPROPRIETY; RISK OF ACTUAL BIAS

The acts and omissions described in this complaint (including the censorship rules) create the appearance of impropriety, or an unacceptable risk of actual bias, whether or not there is actual impropriety or bias.

Count 14

## JUDICIAL DISCLOSURE AND RECUSAL

The acts or omissions set forth in this complaint (including the censorship rules) violate the right to full judicial disclosure of information relevant to possible recusal or disqualification, as required by the Constitution, Rule 21-211, 28 U.S.C. § 144, and case law.

Count 15

## EXCESSIVE FINES

The acts and omissions described in this complaint (including the censorship rules, subject Plaintiff and others to excessive fines, or the threat of excessive fines, contrary to (A) federal law, including the Eighth Amendment, and (B) state law.

61

Count 16

SUPREMACY CLAUSE

The acts and omissions described in this complaint (including the censorship rules) repudiate, violate, or fail to enforce, the Constitution and laws of the United States, including the decisions of the United States Supreme Court cited in this complaint, contrary to the Supremacy Clause in Article VI of the United States Constitution, including Article II, Section 1 of the New Mexico Constitution.

Count 17

EX POST FACTO LAW

The acts and omissions described in this complaint violate the prohibitions against ex post facto laws in (A) federal law including Article I, Section 9 and Section 10 of the United States Constitution, and (B) the laws of New Mexico.

Count 18

CONSPIRACY TO VIOLATE CIVIL RIGHTS

The state government defendants conspired with other persons inside and outside of state government to deprive Plaintiff and others of civil rights, in violation of 42 U.S.C. § 1985, and the law of New Mexico.

Count 19

FAILURE TO PREVENT CONSPIRACY

The state government defendants (and others not yet identified) neglected or refused

to prevent, or aid in preventing, the wrongs described in this complaint, in violation of 42

U.S.C. § 1986, and the law of New Mexico.

Count 20

DISCRIMINATION ON THE BASIS OF SEX

The acts or omissions described in this complaint (including the censorship rules)

discriminate on the basis of sex, contrary to (A) federal law, and (B) the law of New Mexico,

including sec. 18 of the Bill of Rights.

Count 21

DISCRIMINATION ON THE BASIS OF RACE OR ETHNICITY

The acts or omissions described in this complaint (including the censorship rules)

discriminate on the basis of race or ethnicity, contrary to (A) federal law, and (B) the law of

New Mexico.

Count 22

SELF-INCRIMINATION AND COERCED CONFESSIONS

The acts or omissions described in this complaint (including the censorship rules)

violate the protections against self-incrimination in (A) federal law, and (B) the law of New

Mexico, including sec. 15 of the Bill of Rights.

63

Count 23

SUBSTANTIVE DUE PROCESS

The acts and omissions described in this complaint (including the censorship rules) are "arbitrary and conscience-shocking, in a constitutional sense." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

Count 24

NEW MEXICO CIVIL RIGHTS ACT

The state defendants are violating the New Mexico Civil Rights Act, NMSA, § 41-4A-9.

PRAYER FOR RELIEF

Plaintiff respectfully prays for relief against the unlawful conduct described in this complaint, including but not limited to:

(A) As a preliminary matter, deciding that the state censorship rules challenged by this complaint are not operative in the federal courts in New Mexico. This preserves the status quo ante in the federal courts, and allows the courts to operate under their usual rules;

(B) Setting an expedited briefing schedule and in-person hearing on the expedited motion for declaratory relief which Plaintiff has filed with this complaint;

(C) Granting the expedited motion for declaratory judgment no later than June 29, 2026, in advance of the July 1 contempt hearing, subject to later modification and revision;

(D) Declaring that the censorship rules issued by the NMSC are contrary to the First Amendment and the Due Process Clause of the Fifth Amendment;

64

(E)  Declaring that the prohibition against "after-acquired evidence" is a clear violation of Due Process;

(F)  Declaring that under the First Amendment, truth is always a defense to any action for defamation, or, stated conversely, that the plaintiff always has the burden to prove that the alleged defamatory statement is false in a material way;

(G)  Declaring that improving the reputation of judges and the judiciary is not a sufficient justification for regulating speech;

(H)  Declaring that the First Amendment protects "derogatory" speech;

(I)  Declaring that the disclosure requirements for the state judiciary are currently inadequate;

(J)  Declaring that persons accused of contempt have rights to jury trial as provided in federal and state law;

(K)  Declaring that the right to an impartial judge or tribunal is the most fundamental principle of Due Process;

(L)  If necessary, issuing preliminary and permanent injunctions against enforcement of the new rules and sanctions;

(K)  Permitting Plaintiff to file an amended complaint that includes facts which are prohibited by the state censorship rules;

(L)  Issuing injunctive and other relief pursuant to 28 U.S.C. § 2202 to implement and enforce the Court's declaratory judgments;

(M)  Protecting Plaintiff from retaliation, and from further prosecutions or sanctions;

65

(N)  Expediting "the just, speedy, and inexpensive determination" of this action per

Fed. R. Civ. P. 1 and 57;

(O)  Awarding costs and attorneys fees pursuant to applicable laws; and

(P)  Pursuant to Fed. R. Civ. P.  54(c), granting such other and further relief to which

Plaintiff is entitled, even if the Plaintiff has not demanded that relief in pleadings.

/s/ Victor R. Marshall
Victor R. Marshall, *pro se*
414 Live Oak Ct. NE
Albuquerque NM 87122
505-250-7718
victor@vrmarshall.com


## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct to the best of his knowledge.  28 U.S.C. Sec. 1621.


Executed at Albuquerque, New Mexico on June 9, 2026.

/s/ Victor R. Marshall
Victor R. Marshall

66

JS 44 (Rev. 03/24)                                    CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
VICTOR R. MARSHALL

**(b)** County of Residence of First Listed Plaintiff  Bernalillo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se  414 Live Oak CT NE
Albuquerque NM 87122

### DEFENDANTS
Anne Taylor, Joseph Gonzales, Christina Long, Jane Gagne, David Stout, Raul Torrez, Ryan Ellison

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 367 Health Care/ Pharmaceutical | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** [ ] 370 Other Fraud | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | Injury / | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [X] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC § 1983, Civil Rights Acts, First Amendment, Due Process
Brief description of cause:
Complaint for Prospective Relief against Censorship

### VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [X] Yes   [ ] No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  6/9/26
SIGNATURE OF ATTORNEY OF RECORD
Victor Marshall (pro se)

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Note - This case is exempted by LR 16.3.