**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

VICTOR MARSHALL,

Plaintiff,

v. Case No. 1:26-cv-1883-KWR

ANNE TAYLOR, et al,

Defendants.

**MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT**

THIS MATTER comes before the Court upon Defendants' Motions to Dismiss Plaintiff's Complaint **(Docs. 31, 36)** filed on July 7, 2026, and August 17, 2026. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' Motions to Dismiss are well taken and, therefore, are **GRANTED**.

**BACKGROUND**

Victor Marshall, a New Mexico attorney, has a longstanding conflict with the New Mexico Supreme Court ("NMSC") stemming from his suspension from legal practice in 2022, the NMSC's contempt finding, and Marshall's subsequent disbarment. During the NMSC's various hearings with Marshall, the NMSC applied certain standards of decorum, of discipline, and of evidence. The NMSC issued two opinions explaining its conclusions in *Marshall I* and *Marshall II*. *In re Marshall,* 528 P.3d 653 (N.M. 2023) ("*Marshall I*"); *In re Marshall*, 528 P.3d 670 (N.M. 2023) ("*Marshall II*"). The NMSC agreed with the previous findings of the NMSC's Disciplinary Board ("Board") that Marshall had violated multiple New Mexico Rules of Professional Conduct by (1) making statements with reckless disregard for their truth by impugning a judge's integrity (Rule

16-802(A)); (2) filing frivolous pleadings related to the judge (Rule 16-301); and (3) filing groundless pleadings prejudicial to justice (Rule 16-804(D)). *Marshall I*, 528 P.3d at 666–67. Three days later, the NMSC issued an additional order explaining why it found Marshall in contempt. *Marshall II*, 528 P.3d at 672. The NMSC found that Marshall had failed to comply with the standards applicable to suspended attorneys and remarked that his behavior "was incredibly disruptive and lacked any sense of decorum." *Id.* at 674, 676. The NMSC issued a fine against Marshall. *Id.* at 676. After Marshall failed to comply with the contempt order, the NMSC permanently disbarred him in July 2023. *Marshall v. Bacon*, No. 24–2076, 2025 WL 369436 at *2 (10th Cir. 2025).

Marshall brought a lawsuit in federal court against the then-Chief Justice of the NMSC, and other New Mexico officials including members of the NMSC's Disciplinary Board. *Marshall v. Bacon*, 23–494, 2023 WL 7703946 (D.N.M. 2023). This previous lawsuit bears immense similarity to the one now before this Court. Marshall primarily contended that the NMSC had applied unconstitutional rules of conduct to him, which Marshall termed the "new censorship rules." *Id.* at *2. Among numerous constitutional claims, Marshall argued that the rules the NMSC used violate the First Amendment and due process. *Id.* After the lawsuit was dismissed based on the Eleventh Amendment and the *Rooker-Feldman* doctrine, the Tenth Circuit upheld the district court's dismissal. *Marshall v. Bacon*, 24–2076, 2025 WL 369436 at *5, 7 (10th Cir. 2025).

Restyling his arguments, Marshall brings his current legal challenges to this Court alleging twenty-four counts. **Complaint, Doc. 1.** Marshall no longer sues the NMSC. **Complaint at 1.** Marshall focuses this lawsuit's attention on members of the Disciplinary Board whom Marshall contends applied unconstitutional rules against him prior to his disbarment. ***Id.* at ¶ 1.** Marshall seeks protection from future harms from these rules that he suggests could fall upon either himself

or other New Mexico attorneys. ***Id.*** Marshall brings numerous constitutional claims and New Mexico state law claims. In contrast with the first federal lawsuit, Marshall adds Raul Torrez, the Attorney General of New Mexico ("AG"), and Ryan Ellison, the First Assistant United States Attorney for the District of New Mexico ("First AUSA"). **Compl. at 1.** Marshall argues that the AG and First AUSA may have to apply the allegedly problematic NMSC rules in federal court. **Compl. ¶ 14.** Marshall does not indicate that they have done so, nor does he detail any actions taken by these individuals that have affected him. To resolve the Motions to Dismiss, the Court will consider the Complaint as a whole since the separate claims seldom warrant an independent explanation.

On June 10, 2026, Marshall filed his Complaint in this Court. **Compl.** The same day, Marshall filed a Motion for Partial Declaratory Relief asking the Court to provide legal answers to a variety of constitutional questions. **Doc. 5.** On July 7, 2026, the Disciplinary Board Defendants (Anne Taylor, Joseph Gonzales, Jane Gagne, Christine Long, and David Stout) and Defendant AG filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. **Doc. 31.** On August 17, 2026, Defendant First Assistant United States Attorney for the District of New Mexico Ryan Ellison ("First AUSA") filed a Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim. **Doc. 36.** All the parties filed a variety of replies and responses. ***See, e.g.,*** **Docs. 32, 33, 34, 39.** On August 28, 2026, Marshall filed a Motion for Preliminary Injunction. **Doc. 37.** Defendants filed responses to this Motion. **Docs. 42, 44.**

## LEGAL STANDARDS

This Court is one of limited jurisdiction. Article III of the Constitution provides that this Court may only hear "Cases" and "Controversies." Const. Art. III, Sec. 2, Cl. 1. A case or controversy exists only when a plaintiff establishes an injury that is "concrete, particularized, and

actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). "Together, these elements help us distinguish cases and controversies fit for judicial resolution from questions of public policy reserved to the elected branches or abstract disputes better left to the debating hall." *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174, 183 (2026). Article III "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020).

The Supreme Court "has long made clear that distress at or disagreement with the activities of others is not a basis under Article III for a plaintiff to bring a federal lawsuit." *National Park Service v. National Trust for Historic Preservation in the United States*, 609 U.S. ___, 2026 WL 2564318 at *2 (2026) (quoting *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 390 n.3 (2024)). "Causation requires showing 'the injury was likely caused by the defendant.'" *Diamond Alternative Energy, LLC v. Environmental Protection Agency*, 606 U.S. 100, 101 (2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Injuries "result[ing] from the independent action of some third party not before the court" are not redressable. *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26 at 41–42 (1976)). "Where a standing theory rests on speculation about the decision of an independent third party . . . , the plaintiff must show at the least 'that third parties will likely react in predictable ways" based on the Court's remedy. *California v. Texas*, 593 U.S. 659, 661 (2021) (quoting *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019)). If the third parties are unlikely to resolve the injury in response to the Court's remedy, then it is not redressable. When a plaintiff has not established standing, the Court dismisses the claims for lack of subject matter jurisdiction. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013).

Additionally, under the Federal Rules of Civil Procedure, the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded factual allegations from the complaint and view those allegations in the light most favorable to the plaintiff. *See Smith v. United States*, 561 F.3d 1090, 1097–1098 (10th Cir. 2009). However, "the four corners of the complaint" mark the boundaries of the allegations the Court uses to determine the outcome of the 12(b)(6) motion to dismiss. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

Pleadings must do more than provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is not enough. *Id.* (citation modified). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). The Court "disregard[s] conclusory statements and look[s] only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1066–67 (10th Cir. 2022) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

**DISCUSSION**

The Court will do its best to fairly address the arguments Marshall raises even if the arguments are, at times, unclear. To resolve these legal issues, it is not necessary or appropriate for the Court to expound on the propriety or impropriety of Marshall's disbarment. First, the Court concludes that it does not have jurisdiction as Marshall lacks standing against both (1) the Board

Defendants and (2) the remaining Defendants (the AG of New Mexico and the First AUSA for the District of New Mexico). Second, the Court holds that Marshall has failed to state a claim upon which relief can be granted. Last, the Court finds that *Rooker-Feldman* bars its jurisdiction.

## I. Marshall fails to establish Article III Standing

### A. Marshall does not have standing to bring claims against the NMSC Disciplinary Board Defendants

Marshall spends much of his briefing discussing issues he says face the New Mexico legal community as a whole. **Compl. ¶ 1.** Marshall takes issue, among other things, with what he alleges are the NMSC's promotion of Diversity, Equity and Inclusion ("DEI") programs, support of transgender identities, public statements made by the NMSC criticizing the President's Executive Orders, and alleged conspiracies between New Mexico politicians and Jeffrey Epstein. ***Id.* ¶¶ 56, 153, 182, 202.** Little is done to tie these political disagreements to specific actions taken by the Disciplinary Board against Marshall. Purely political disagreements are often quintessential examples of questions "of public policy reserved to the elected branches or abstract disputes better left to the debating hall." *First Choice Women's Resource Centers, Inc.*, 608 U.S. at 183.

Marshall seems to primarily tailor his lawsuit towards prospective relief in challenging the future use of New Mexico rules against himself or against other New Mexico attorneys. **Compl. ¶ 1.** However, the center of gravity of Marshall's Complaint and his grievances seem to lie in his past disbarment. He frequently references and critiques the past decisions by the NMSC that led to his disbarment. The Court will address both of these possible types of claims and find the Court lacks standing.

#### *i. Marshall lacks standing to raise challenges to the Disciplinary Board's actions leading to his disbarment*

Marshall indirectly raises many issues surrounding his disbarment. For thoroughness, the Court will address Marshall's lack of standing to bring claims challenging his disbarment. At their

clearest, Marshall's disputes revolve around the NMSC issuing rules that bind lawyers to adopt practices Marshall views as in violation of the First Amendment among many other alleged defects. **Compl. ¶¶ 2–9.** To establish standing, Marshall must show a "concrete, particularized, and actual or imminent [injury]; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). The standing issues with this claim primarily pertain to causation and redressability as disbarment likely supplies a cognizable injury.

First, looking to causation, the NMSC (not named as a Defendant) issues these rules and finalizes attorney disbarments. The Disciplinary Board does not. *Marshall v. Bacon*, 2025 WL 369436 at *2 ("the NMSC issued an order permanently disbarring Marshall due to his failure to purge himself of his contempt."). Marshall seems to acknowledge this. **Compl. ¶ 2** ("the NMSC has systematically stripped these constitutional protections" through the "censorship rules"). The Disciplinary Board performs advisory duties culminating in a recommendation of a course of action to the NMSC. *Marshall v. Bacon*, 2025 WL 369436 at *1 ("[t]he NMSC explained that substantial evidence supported the decision of a hearing committee of the NMSC's Disciplinary Board . . ."). The rules governing the NMSC and Disciplinary Board make this clear. While the Board can *investigate* and the Board may *recommend* an action to the NMSC, the NMSC makes final determinations. New Mexico Rules 17-102 ("Powers and duties" of the Board to "investigate"); Rule 17-105 (Board can "recommend" "discipline involving suspension . . . [or] disbarment"); Rule 17-201 (Board governs attorneys only). The rules suggest only the NMSC can disbar a lawyer, not the Board. Rule 17-315(E) (the Board may "recommend" suspension or disbarment, then must "prepare a written report" and send to the NMSC for approval or denial). Therefore, the Disciplinary Board is an improper defendant for this grievance.

Marshall contends the NMSC Disciplinary Board applied a variety of rules against him that were unconstitutional. **Compl. ¶¶ 47, 48.** As the Disciplinary Board did not finalize Marshall's disbarment, even if the Disciplinary Board used unconstitutional rules or improperly recommended his disbarment, this action is not sufficiently connected to Marshall's disbarment to be appropriate for standing purposes. The Disciplinary Board merely made recommendations, not final decisions against Marshall. Rule 17-315(E). While the Disciplinary Board made findings that Marshall committed violations, the NMSC not the Disciplinary Board disbarred him. *Marshall v. Bacon*, 2025 WL 369436 at *1. "Causation requires showing 'the injury was likely caused by the defendant.'" *Diamond Alternative Energy, LLC v. Environmental Protection Agency*, 606 U.S. 100, 101 (2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). To the extent that Marshall's professed injury is disbarment, the Board's recommendation did not cause his disbarment, the NMSC did.

Second, there is also a redressability problem. If the Court ordered the Board to reinstate Marshall, this would not effectuate Marshall's reinstatement. Only the NMSC's action led to his disbarment.[1] Injuries "result[ing] from the independent action of some third party not before the court" are not redressable. *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26 at 41-42). "[T]he plaintiff must show at the least that third parties will likely react in predictable ways" to invoke standing based on the prediction of the third party's response. *California v. Texas*, 593 U.S. 659, 661 (2021) (quoting *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019)) (quotation modified). Here, even if the Court ordered the Board to alter their recommendation of disbarment, it seems that NMSC would not

[1] The Tenth Circuit dealt with the *Rooker Feldman* issues, among other problems, with Marshall's previous lawsuit directed at the NMSC itself. Unfortunately for Marshall, pursuing only the Board and not the NMSC does not provide the Court with standing, as discussed.

reinstate Marshall. Under their rules, "[a] person who has been disbarred may not apply for reinstatement." Rule 17-214(A). Just as the NMSC can agree with the Board's recommendation of disbarment, so too can the NMSC deny the Board's recommendation not to disbar an attorney. Thus, Marshall's alleged injury pertains to the NMSC's action *not* the Disciplinary Board. This injury is both not connected to the Board and not redressable by any order the Court could address to the Board. In conclusion, Marshall has failed to establish standing over the Board Defendants.

*ii. Marshall also lacks standing for claims seeking prospective relief against the Board Defendants*

Marshall also suggests that he is seeking prospective relief. **Compl. ¶ 1.** "In the First Amendment context, two types of injuries may confer Article III standing to seek prospective relief." *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (citation modified). A plaintiff may have standing by alleging "an intention" to violate a statute plaintiff contends is in conflict with the First Amendment and "there exists a credible threat of prosecution" for this violation. *Id.* (citation modified). Relatedly, a plaintiff can show standing under the theory that a law chills speech. To receive prospective relief based on the chilling theory, the plaintiff must show evidence of participation in the prohibited category of speech, evidence of a future desire to engage in such speech, and a "plausible claim" that they will not speak "because of a credible threat that the statute will be enforced." *Rio Grande Foundation v. City of Santa Fe, New Mexico*, 7 F.4th 956, 959 (10th Cir. 2021) (citation modified). Marshall's prospective relief claims fail to establish standing at the outset.

In support of his professed future injury, Marshall writes that he "is facing the immediate threat of incarceration and unlimited fines" and "both civil and criminal penalties for contempt, with no ability to defend himself." **Compl. ¶ 30.** Marshall then attaches court documents from a pending and unrelated case in the New Mexico Second Judicial District Court. **Doc. 2. (Ex-1) at**

**3–6.** In *that* case, Marshall was sanctioned for failing to respond to a New Mexico subpoena for a deposition in a Florida State domestic relations case. ***Id.* at 4,6.** There is no clear connection between that case and the present one. Marshall does not spend much time trying to draw a connection.[2] Additionally, Marshall is no longer a licensed attorney in New Mexico after his disbarment. Professionals often have standing to challenge regulations for First Amendment issues that they are subject to. *Chiles v. Salazar,* 607 U.S. 627, 637 (2026). While lawyers may have standing to challenge rules governing their practices as violating, for example, the First Amendment, non-lawyers often do not as they are not typically subject to the bar rules. *See, e.g., Harrington v. Wilson*, 242 Fed. App'x 514 at *1 (10th Cir. 2007) (citation modified). Here, Marshall does not adequately allege a future injury specific to him, a non-lawyer. A pending, unrelated case is insufficient to show that the NMSC or other governmental body intends to penalize him. Relatedly, the Board is a poor fit for a defendant for the same reason stated above, namely that the NMSC is the body that imposes penalties. As Marshall is disbarred, he is not an attorney subject to the complained-of rules. Therefore, it seems untenable to believe that Marshall will be subject to future rule violations or that Marshall could speak in a way prohibited by the rules. A lack of any future subjection to the rules defeats Marshall's claim for prospective relief.

Marshall makes a further attempt to salvage standing on behalf of attorneys who may be chilled by NMSC rules. **Compl. ¶ 1.** This is also unavailing. Most fundamentally, as discussed above, the Board Defendants would also be improper defendants under a third-party standing theory as these Defendants do not finalize license disbarments or propagate bar rules.

---

[2] Marshall claims that the case is a "further enforcement of the unconstitutional rulings in" *Marshall I* and *Marshall II*. **Doc. 43 at 5.** The Court does not see that this is so, and Marshall provides no reasoning supporting this.

The Court will briefly discuss other reasons why this attempt at third-party standing is inadequate. Marshall does not show any "close relationship" with New Mexico attorneys that make him the proper representative of their claim before this Court. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). As in *Kowalski,* Marshall shows "no relationship at all" with the third parties he would like to use for standing. *Id.* at 131. Second, Marshall does not show a "hindrance" preventing third-party attorneys from bringing their claims. *Id.* While Marshall contends that the NMSC could apply the rules from *Marshall I* and *Marshall II* against another attorney, Marshall says almost nothing to show that such a prosecution is imminent or at all likely.[3] Thus, a supposed chilling threat is unlikely. *Compare Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1090 (10th Cir. 2006) (endorsing chilling theory when past actions and proposed future actions were directly inhibited by a law interfering with speech) *with Laird v. Tatum*, 408 U.S. 1, 10–11 (1972) (no standing based on chilling theory when government action was speculative and discretionary). Similar to *Laird*, Marshall has shown no plausible reason to believe that a chilling effect exists or that future parties face unconstitutional penalties. In conclusion, Marshall fails to establish standing against the Board Defendants under any of his theories.

### B. Marshall does not have standing to bring claims against Raul Torrez and Ryan Ellison

Marshall says almost nothing about Raul Torrez and Ryan Ellison in his Complaint or other briefing. In his Complaint, Marshall references Raul Torrez and Ryan Ellison by name once each. He simply notes that they are defendants that he sues in their official capacities. **Compl. at ¶ 24**

[3] Marshall relies on inapposite cases like *Olivier* and *Wooley* in which he insists that the Supreme Court allowed lawsuits for prospective relief to proceed on First Amendment grounds even though the plaintiff had been subjected to a conviction that may otherwise render the First Amendment challenge not viable. *Olivier v. City of Brandon, Mississippi*, 607 U.S. 552 (2026); *Wooley v. Maynard*, 430 U.S. 705 (1977). These cases do not alter the Court's determinations regarding the lack of third party standing.

("Defendant Raul Torrez is the Attorney General of New Mexico. He is sued in his official capacity only."); **Compl. at ¶ 26** ("Defendant Ryan Ellison is First Assistant United States Attorney for the District of New Mexico. He is sued in his official capacity only.").

Read generously, Marshall envisions a scenario where the AG and First AUSA are forced to use the NMSC's "censorship rules" in federal court. **Compl. ¶ 29.** Marshall details the supposedly drastic consequences. Marshall points to the Rules Enabling Act and the corresponding McDade Amendment that, combined, flesh out the rule that federal prosecutors should typically follow state ethics rules except when those rules violate the Constitution or would impede justice. **Doc. 43 at 1, 2**; 28 U.S.C. § 2072; 28 U.S.C. § 530B. Marshall envisions a violation of these laws and federal prosecutors who are compelled by the NMSC to use unconstitutional state ethics rules.

This is a hypothetical scenario. Marshall gives no examples or officials forced to comply with these rules. Worse, it is an imaginary scenario that Marshall envisions happening to the AG, not to himself. Even if this problem actually occurred, it would not affect Marshall, only government officials who are subject to the McDade Amendment. Without an active controversy, Marshall is writing to the Court to request a ruling for the future about what the law is regarding the NMSC's rules in federal court. He seems to ask that the Court inform the AG and First AUSA that they may or should not use the "censorship rules" as these rules violate the Constitution. **Compl. ¶ 14.**

Abstract legal questions are not properly before the Court. As Justice Jay wrote to President Washington responding to his request for legal advice, "the [imp]ropriety of our extra-judicially deciding the questions alluded to" is well established. Letter from the Justices of the Supreme Court to President George Washington (Aug. 8, 1793).[4] Marshall does not allege a sufficient injury

[4] https://founders.archives.gov/documents/Washington/05-13-02-0263

caused to him by either the AG or First AUSA. Marshall also does not allege that these Defendants caused him an injury. For redressability on the personal injuries Marshall does allege like disbarment, the AG or First AUSA also would have no power to force the NMSC to retract a disbarment. Therefore, Marshall fails to establish any of the elements for standing against the AG and the First AUSA.

Marshall's suggestions to the contrary are not persuasive. Marshall primarily argues based on *United States v. Colorado Supreme Court* where the Tenth Circuit found standing for government attorneys who would be subject to potentially problematic state ethics rules. *United States v. Colorado Supreme Court*, 87 F.3d 1161 (10th Cir. 1996). Notably, the state court had shown a willingness to apply these ethics rules to federal attorneys and the federal attorneys themselves expressed disapproval with the rules and claimed they interfered with their duties. *Id.* at 1164. Here, Marshall has not shown the state court has the propensity to apply their ethics rules to federal attorneys, the federal attorneys have not expressed an issue with the NMSC rules, and Marshall, *not* the federal employees, is bringing the suit. Here, the federal attorneys are actually Defendants and express disagreement with Marshall about these claims. Marshall's contention is that standing exists on behalf of chilled government attorneys who also happen to be Defendants. This is not compelling.

In sum, Marshall has not demonstrated grounds for standing with respect to any of the Defendants. Therefore, the Court will dismiss Marshall's claim under Rule 12(b)(1) for lack of jurisdiction.

## II. <u>Marshall fails to state a claim under Rule 12(b)(6)</u>

Alternatively, Defendants argue that Marshall has failed to state a claim and argue for dismissal on Rule 12(b)(6) grounds. **Docs. 31, 36.** The Court agrees with Defendants. Similar to

the standing analysis above, Marshall alleges many generalized grievances and legal conclusions that NMSC rules are unconstitutional but does not provide sufficient factual allegations. Legal conclusions are not enough to state a claim. Additionally, factual allegations must be something that the Defendants did, listing generalized grievances with non-parties fails to state a claim. ***See, e.g.,*** **Compl. ¶¶ 56, 153, 182, 202.**

First, the vast majority of the Complaint is spent listing constitutional arguments as to why various NMSC actions or rules are problematic. These legal conclusions are typically not attached to specific actions that Marshall was harmed by. ***See, e.g.,*** **Compl. ¶¶ 50–52.** Legal conclusions alleging unconstitutionality are insufficient to state a claim.

Second, Marshall does raise some specific allegations, but these are aimed at non-parties. For example, Marshall takes with the NMSC's "letter to the public" that "vow[s] to oppose the Trump administration's initiatives against DEI, gender identity, and trans ideology." **Compl. ¶ 56.** However, the NMSC is not a defendant.

To support his claims for prospective relief, Marshall's Complaint alleges that he "is facing the immediate threat of incarceration and unlimited fines." **Compl. at 6.** This claim refers to a proceeding in a state court for a seemingly unrelated contempt issue. **Doc. 2. (Ex-1) at 3–6.** Marshall does essentially nothing to show how that state court case is related to his disbarment, to any other content alleged in the Complaint, or to any of the Defendants here. Thus, Marshall fails to adequately show future harm he faces as this legal action does not adequately allege a claim against his named Defendants.

Marshall does mention specific actions of the Defendants in passing, but these minimal acknowledgments do not state a claim. Marshall notes that "the Disciplinary Board can investigate, warn, and sanction attorneys without creating a public record." **Compl. ¶ 55.** The generality of

this language, only asserting that attorneys could be improperly investigated, is far from enough. Unsupported, general statements of possible actions do not state a claim.

In sum, Marshall's Complaint fails to make specific factual allegations sufficient to state a claim under Rule 12(b)(6). Therefore, in addition to the above-mentioned lack of standing, the Court dismisses Marshall's Complaint for failure to state a claim.

### III. With respect to the Board Defendants, Marshall's Complaint poses serious *Rooker-Feldman* issues

While the above explanations sufficiently explain the standing and 12(b)(6) issues, *Rooker-Feldman* provides an additional, and potent, reason. To the extent Marshall raises challenges to his disbarment on his proceedings before the Board and the NMSC, the *Rooker-Feldman* doctrine bars his claims. In Marshall's previous (and similar) federal lawsuit, the Tenth Circuit affirmed the district court's dismissal of his claims against Justice Bacon under the *Rooker-Feldman* doctrine. *Marshall v. Bacon*, 2025 WL 369436 at * 6. *Rooker-Feldman* "prevents federal courts . . . from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 514 (10th Cir. 2023). The Tenth Circuit found that, despite his protestations that the rules "affect[ed] all the lawyers in New Mexico," Marshall's challenge "require[d] a determination that the NMSC's [final] decisions were wrongfully entered." *Marshall v. Bacon*, 2025 WL 369436 at * 6. Thus, the Tenth Circuit found that *Rooker-Feldman* barred these claims.

Marshall cannot evade this conclusion simply by naming different Defendants. While the Board Defendants raise *Rooker-Feldman* this time, Marshall's challenges to rules allegedly affecting all lawyers in New Mexico hinge on contesting the NMSC's final decisions in *Marshall I* and *Marshall II*. **Doc. 31 at 4.** To the extent Marshall appears to raise challenges to collateral

proceedings from *Marshall I* and *Marshall* II, "ongoing proceedings collateral to a [state supreme court] decision that has become final do not affect application of *Rooker-Feldman* doctrine to that decision." *Marshall v. Bacon*, 2025 WL 369436 at *7 (citation modified). As the Tenth Circuit explained in Marshall's initial federal lawsuit, the identity of the defendant is not paramount to *Rooker-Feldman* but whether a plaintiff's lawsuit requires a determination that a state court's final decision was incorrect. *Marshall v. Bacon*, 2025 WL 369436 at * 6. Again, Marshall is making challenges to the NMSC's final decisions on behalf of himself and lawyers in New Mexico at large. The Tenth Circuit considered this and found the supposed generality of his claims to all lawyers did not affect the *Rooker-Feldman* analysis. When review of these sorts of claims is permitted, the United States Supreme Court alone has jurisdiction. 28 U.S.C. § 1257.

Marshall attempts to weave his way out of this problem by claiming that he faces future disciplinary actions. **Compl. ¶ 19.** As discussed above, the future legal action that Marshall faces appears to pertain to an entirely unrelated case involving a Florida domestic dispute. **Doc. 2. (Ex-1) at 3–6.** Notably, if Marshall's pending case was collateral to his disbarment proceedings conducted by the NMSC, *Rooker-Feldman* would still be implicated. Denying the application of NMSC rules in a collateral case to *Marshall I* and *Marshall II* would still require challenging the state supreme court's final decision. *See Marshall v. Bacon*, 2025 WL 369436 at * 6. Therefore, Marshall's suggestion of a future, collateral proceeding is unavailing. In sum, the Court finds that the reasoning of the Tenth Circuit's prior opinion on the *Rooker-Feldman* issue applies here. Marshall's Complaint is dismissed for lack of standing, failure to state a claim, and for the *Rooker-Feldman* issues.

**IV. <u>As the Court lacks jurisdiction, Marshall's additional Motions for Partial Declaratory Relief and Preliminary Injunction are moot</u>**

Marshall filed a Motion for Partial Declaratory Relief **(Doc. 5)** and a Motion for Preliminary Injunction **(Doc. 37)**. These Motions are predicated on Marshall's Complaint. Motions for "temporary, preliminary relief pending resolution of the underlying claims" are mooted when the underlying claims are dismissed. *Rose v. Utah State Bar*, 444 Fed. App'x 298, 299 (10th Cir. 2011) (citing *United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988)); *see Baker v. Bray*, 701 F.2d 119, 122 (10th Cir. 1983). As the Court dismisses Marshall's Complaint, both Motions for preliminary relief are, therefore, moot.

**CONCLUSION**

The Court finds that it does not have standing, that Marshall fails to state a claim, and that *Rooker-Feldman* bars many of Marshall's claims. Therefore, the Court will dismiss Marshall's Complaint. The Court additionally holds that Marshall's outstanding Motions **(Docs. 5, 37)** are mooted by the Court's dismissal of Marshall's Complaint. Last, the Board Defendants' and Defendant Torrez's Opposed Motion for Extension of Time to File Answer **(Doc. 29)** is mooted by the dismissal of the Complaint.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss **(Docs. 31, 36)** are **GRANTED**. Subsequently, the Court **DISMISSES** Plaintiff's Complaint **WITHOUT PREJUDICE.**

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE